TRIAL COURT ADMINISTRATOR

DOCKETED BY

09 OCT -8 PM 3: 14

RECEIVED AND FILED

1

2

3

4    IN THE CIRCUIT COURT OF THE STATE OF OREGON

5    FOR THE COUNTY OF JACKSON

6  PREMIERWEST BANK,              Case No.   094683 E2

7              Plaintiff,          **COMPLAINT -**
                                   **Foreclosure of Trust Deed as Mortgage on**
8        v.                       **Real Property, Action on Notes, Action on**
                                   **Guaranty**
9  PETER M. BUCKLIN and JOAN B.
   BUCKLIN, Husband and Wife, ROBERT V.   **Not Subject to Mandatory Arbitration**
10 ROWLAND and ELEANOR E. ROWLAND,
   Husband and Wife, JEFFERY IVERSON
11 and CATHERINE IVERSON, Husband and
   Wife, and JAMES OLLENDICK,
12
                Defendants.
13
   Plaintiff alleges:
14                    **FACTS COMMON TO ALL CLAIMS**

15                              1.

16     Plaintiff PremierWest Bancorp dba PremierWest Bank (hereinafter "Plaintiff"),

17 is an Oregon corporation with a principal place of business in Jackson County,

18

19 Oregon.

20                              2.

21     During all times herein mentioned, Defendants Peter M. Bucklin, Joan B.

22 Bucklin are residents of the State of Oregon.

23 //

24 //

25 //    **EXHIBIT 1**

26

Page 1 – COMPLAINT TO FORECLOSE ON REAL AND PERSONAL PROPERTY

KELLINGTON, KRACK, RICHMOND, BLACKHURST & GLATTE, LLP
Attorneys at Law
23 NEWTOWN STREET, MEDFORD, OREGON, 97501
Telephone: (541) 779-5175 • Fax: (541) 779-5585

3.

Defendant Peter M. and Joan B. Bucklin Revocable Trust is a California Trust that executed a guaranty in the State of Oregon for the benefit of property located in Jackson County, Oregon.

4.

Defendants Robert V. Rowland and Eleanor E. Rowland are residents of California but are owners of real property being foreclosed in Jackson County, Oregon.

5.

Defendants Jeffery M. Iverson, Catherine M. Iverson, are residents of California and signed certain documents in reference to property being foreclosed in Jackson County, Oregon

6.

Defendant James Ollendick is a resident of California and signed certain documents in reference to property being foreclosed in Jackson County, Oregon.

COUNT ONE

FIRST CLAIM FOR RELIEF

(Foreclosure of Trust Deed as Mortgage on Real Property)

7.

Reallege paragraphs 1 – 7.

//

//

Page 2 – COMPLAINT TO FORECLOSE ON REAL AND PERSONAL PROPERTY

8.

Within the State of Oregon, and for valuable consideration on or about August 24, 2006, Defendant Peter M. Bucklin (hereinafter Defendant Bucklin) made, executed, and delivered to Plaintiff, a promissory note in the principal sum of $3,400,000.00, a copy of which is attached hereto, labeled Exhibit 1, and by this reference made a part hereof, and that ever since said day, the Plaintiff has been, and now is, the sole owner and holder of that note and the trust deed hereinafter alleged.

9.

At the same time and place that Defendant Bucklin executed and delivered said promissory note, Defendants Bucklin, Joan Bucklin, Jefferery Iverson, Catherine Iverson and James Ollendick made, executed, and delivered a Line of Credit Instrument to Plaintiff, as beneficiary, whereby said Defendants conveyed unto Lawyers Title Ins. Corp, as trustee for Plaintiff, the following described real property:

Parcel No. Two (2) of Partition Plat No. P-45-2006, recorded May 19, 2006, in Record of Partition Plats in Jackson County, Oregon, and filed as Survey No. 19191, in the Office of the County Surveyor.

The Real Property or its address is commonly known as 10522, 10534, 10546, 10558 and 10586 Highway 62, Eagle Point, OR 97524. The Real Property tax identification number is 10239255; 10983554.

That said Line of Credit Instrument was given to secure payment of the promissory note and to secure the performance of the obligations and covenants of Defendants Bucklin, Jefferey Iverson, Catherine Iverson and James Ollendick contained in said Line of Credit Instrument. Said Line of Credit Instrument was duly acknowledged in the manner required for recording and on September 1, 2006 was

Page 3 -- COMPLAINT TO FORECLOSE ON REAL AND PERSONAL PROPERTY

recorded in the Records of Jackson County, Oregon as number 2006-044583. A

copy of said trust deed is attached hereto, labeled Exhibit 2, and by this reference

made a part hereof.

10.

On or about December 18, 2008, Plaintiff and Defendant Bucklin agreed to a

change in terms of said promissory note and Line of Credit Instrument which

extended the maturity date of the loan from November 24, 2008 until September 24,

2009 and set the variable interest rate at a floor of no less than 6.5% and no more

than 12%. A copy of said modified agreement is attached hereto, labeled Exhibit 3,

and by this reference made a part hereof. Also on that date, Defendant Bucklin

executed a Business Loan Agreement which modified the terms of the loan herein.

Said Agreement is attached hereto as Exhibit 4 and incorporated herein by this

reference.

11.

That said promissory note and Line of Credit Instrument are in default in that

Defendant Bucklin has failed and refused to pay the principal payment of

$3,388,417.15 which was due in full on September 24, 2009 as well as failure to pay

outstanding interest balance in the amount of $63,971.80, late charges of $8,363.61

and appraisal costs of $3,500.

12.

Under the provisions of said promissory note and Line of Credit Instrument,

Plaintiff has and does elect to declare the entire balance of principal and interest now

due and payable.

Page 4 – COMPLAINT TO FORECLOSE ON REAL AND PERSONAL PROPERTY

13.

That there is now owing on said promissory note and trust deed, from Defendant Bucklin, to Plaintiffs, the sum of $3,464,252.56, which amount is immediately due and payable, plus interest thereon at the default rate which is currently at 11.50 percent per annum from September 24, 2009 until paid.

14.

That by the terms of said promissory note and trust deed, the Defendant Bucklin promised, in case action be instituted to collect said promissory note or to foreclose said trust deed, to pay such additional sum as the court may adjudge reasonable as attorney fees in said action and Plaintiff is thus entitled to reasonable attorney fees as determined by the court pursuant to ORCP 68.

15.

That by the terms of said trust deed, it was provided that Defendant Bucklin would be liable to the Plaintiff for costs and expenses of the Trustee incurred in connection with or in enforcing the obligation together with Trustee's fees actually incurred.

16.

That by the terms of said trust deed, it was provided that if expense was incurred for the examination of the record affecting the title to said property, the Defendant would be liable to the Plaintiff for such expense. That the Plaintiff has incurred the expenses for examination of the record affecting the title of said property which Defendants are required to pay under the note, which sum has not been paid to the Plaintiff by Defendants.

Page 5 – COMPLAINT TO FORECLOSE ON REAL AND PERSONAL PROPERTY

17.

That there have been no other proceedings at law or otherwise for recovery of the debt or any portion thereof owed under said promissory note and trust, and Plaintiff has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF

### (Guaranty)

18.

Reallege all previous paragraphs.

19.

Defendant Peter M. and Joan B. Bucklin Revocable Trust personally guaranteed the Promissory Note by signing a Commercial Guaranty, copies of which are attached hereto as Exhibit 5 and by this reference made a part hereof.

20.

The guaranty provided that in the event of an action for collection of the amounts due on the guaranties that Defendants would pay, in addition to the amounts owed on the Note, Plaintiff's reasonable attorney fees and collection costs. Plaintiff has been required to obtain the services of an attorney to collect upon the Note and to bring this action and Plaintiff is therefore entitled to recover its reasonable attorney fees and collection costs pursuant to the express terms of the Note and ORS 20.096.

//

//

Page 6 – COMPLAINT TO FORECLOSE ON REAL AND PERSONAL PROPERTY

## COUNT TWO

### FIRST CLAIM FOR RELIEF

(Foreclosure of Trust Deed as Mortgage on Real Property)

21.

Reallege all previous paragraphs.

22.

Within the State of Oregon, and for valuable consideration on or about October 19, 2007, Defendants Peter M. Bucklin and Joan B. Bucklin (hereinafter Defendants Bucklin) and Defendants Robert V. Rowland and Eleanor E. Rowland (hereinafter Defendants Rowland") made, executed, and delivered to Plaintiff, a promissory note in the principal sum of $235,000.00, a copy of which is attached hereto, labeled Exhibit 6, and by this reference made a part hereof, and that ever since said day, the Plaintiff has been, and now is, the sole owner and holder of that note and the trust deed hereinafter alleged.

23.

At the same time and place that Defendants Bucklin and Rowland made, executed, and delivered said promissory note, said Defendants made, executed, and delivered a trust deed to Plaintiff, as beneficiary, whereby said Defendants conveyed unto First American Title Insurance, as trustee for Plaintiff, the property commonly known as 151 Morning Dove Trail, Eagle Point, Oregon and 33 Broken Stone Way, Eagle Point, Oregon, with the following described legal description:

//

//

Page 7 – COMPLAINT TO FORECLOSE ON REAL AND PERSONAL PROPERTY

Tract A:
Lot Thirty-three (33) and a portion of Thirty-four (34), POPPY VILLAGE PHASE 1, in the City of Eagle Point, Jackson County, Oregon, according to the official plat thereof, recorded in Volume 29, Page 11, Plat Records, described as follows:
Commencing at the initial point for Poppy Village A.P.C., Phase 1, as shown in Volume 29 of Plats at page 11 of Records of Jackson County, Oregon; thence North 00°06'01" West, 177.24 feet to a 5/8 inch diameter iron pin; thence North 89°52'21" East 96.00 feet to a 5/8 inch diameter iron pin; thence North 89°51'21" East 14.64 feet to a 5/8 inch diameter iron pin; thence North, 107.59 feet to a 5/8 inch diameter iron pin and the True Point of Beginning; thence North 13°28'13" East 52.00 feet to a 5/8 inch diameter iron pin; thence South 76°31' 47" East 120.00 feet to a concrete nail and stainless steel washer set in a concrete curb; thence South 13°28'13" West 46.98 feet to a concrete nail and stainless steel washer set in a concrete curb; thence South 5.16 feet to a concrete nail and stainless steel washer set in a concrete curb; thence North 76°31'47" West 121.20 feet to the Point of Beginning.

Account 10975897, Levy Code 0901, Map 361W10BB 04300

Tract B:
Lot One (1), POPPY VILLAGE, PHASE 1, in the City of Eagle Point, Jackson County, Oregon, according to the official plat thereof, recorded in Volume 29, Page 11, Plat Records.

Account 10975875, Levy Code 0901, Map 361W10BB 02100

That said trust deed was given to secure payment of the promissory note and to secure the performance of the obligations and covenants of Defendants Bucklin and Rowland contained in said trust deed. Said trust deed was duly acknowledged in the manner required for recording and on October 24, 2007, was recorded in the Records of Jackson County, Oregon as number 2007-048787. A copy of said trust deed is attached hereto, labeled Exhibit 7, and by this reference made a part hereof.

//

//

Page 8 – COMPLAINT TO FORECLOSE ON REAL AND PERSONAL PROPERTY

24.

On or about April 23, 2008 and again on December 18, 2008, Plaintiff and Defendants Bucklin and Rowland agreed to a change in terms, which modified the principal amount of the loan due to $233,697 and extended the maturity date of the loan to August 15, 2009.

25.

That said promissory note together with the change of terms and trust deed are in default in that Defendants Bucklin and Rowland have failed and refused to pay the principal payment of $233,697.72 which was due in full on August 15, 2009 as well as failure to pay outstanding interest balance in the amount of $3,984.20 and late fees of $236.63.

26.

Under the provisions of said promissory note together with modifications of the trust deed, Plaintiff has and does elect to declare the entire balance of principal and interest now due and payable.

27.

That there is now owing on said promissory note and trust deed, from Defendants Bucklin and Rowland, to Plaintiff, the sum of $237,918.55, which amount is immediately due and payable, plus the variable default interest rate which is currently 12% per annum from August 15, 2009 until paid.

28.

That by the terms of said promissory note and trust deed, the Defendants Bucklin and Rowland promised, in case action be instituted to collect said promissory

Page 9 – COMPLAINT TO FORECLOSE ON REAL AND PERSONAL PROPERTY

note or to foreclose said trust deed, to pay such additional sum as the court may adjudge reasonable as attorney fees in said action and plaintiff is thus entitled to reasonable attorney fees as determined by the court pursuant to ORCP 68.

29.

That by the terms of said trust deed, it was provided that the Defendants Bucklin and Rowland would be liable to the Plaintiff for costs and expenses of the Trustee incurred in connection with or in enforcing the obligation together with Trustee's fees actually incurred.

30.

That by the terms of said trust deed, it was provided that if expense was incurred for the examination of the record affecting the title to said property, the Defendants would be liable to the Plaintiffs for such expense.  That the Plaintiff has incurred the expenses for examination of the record affecting the title of said property which Defendants are required to pay under the note, which sum has not been paid to the Plaintiff by Defendants.

31.

That there have been no other proceedings at law or otherwise for recovery of the debt or any portion thereof owed under said promissory note and trust, and Plaintiff has no adequate remedy at law.

//

//

//

//

//

Page 10 – COMPLAINT TO FORECLOSE ON REAL AND PERSONAL PROPERTY

KELLINGTON, KRACK, RICHMOND, BLACKHURST & GLATTE, LLP
Attorneys at Law
23 NEWTOWN STREET, MEDFORD, OREGON, 97501
Telephone: (541) 779-5175 • Fax: (541) 779-5585

## COUNT THREE

### FIRST CLAIM FOR RELIEF

(Foreclosure of Trust Deed as Mortgage on Real Property)

32.

Reallege all previous paragraphs.

33.

Within the State of Oregon, and for valuable consideration on or about October 19, 2007, Defendants Peter M. Bucklin and Joan B. Bucklin (hereinafter Defendants Bucklin) made, executed, and delivered to Plaintiff, a promissory note in the principal sum of $193,000.00, a copy of which is attached hereto, labeled Exhibit 8, and by this reference made a part hereof, and that ever since said day, the Plaintiff has been, and now is, the sole owner and holder of that note and the trust deed hereinafter alleged.

34.

At the same time and place that Defendants Bucklin made, executed, and delivered said promissory note, said Defendants made, executed, and delivered a trust deed to Plaintiff, as beneficiary, whereby said Defendants conveyed unto First American Title Insurance, as trustee for Plaintiff, the following described real property:

Commencing at the corner common to Sections 9, 10, 15, 16 in Township 34 South, Range 1 West of the Willamette Meridian in Jackson County, Oregon; thence along the northerly boundary of Section 15, South 89°12'43" East (Record = South 89°17' East), 2096.80 feet to a 5/8" rebar found set on the easterly right of way line of Crater Lake Highway (State Highway No. 62); thence along said Highway line, South 19°22'22" West (Record = South 19°19' West), 295.20 feet to a 5/8" rebar with plastic cap set for the most northerly corner of tract described in Instrument No. 2004-

KELLINGTON, KRACK, RICHMOND, BLACKHURST & GLATTE, LLP
Attorneys at Law
23 NEWTOWN STREET, MEDFORD, OREGON, 97501
Telephone: (541) 779-5175 • Fax: (541) 779-5585

069020 of the Official Records of said County for The True Point of Beginning; thence continuing along the said highway line, South 19°22'22" West, 60.00 feet to a 5/8" rebar with plastic cap set; thence South 68°43'01" East, 90.00 feet to a 5/8" rebar with plastic cap set at an angle point; thence South 70°37'38" East, a more or less distance of 83.00 feet to the westerly bank of the Rogue River; thence along said river bank, a more or less bearing and distance of North 12°10'50" East, 63.50 feet to the most easterly corner of said tract; thence North 70°37'38" West, a more or less distance of 165.00 feet (Record = North 70° 41' West, 162.63 feet) to the True Point of Beginning.

Account 10269680, Levy Code 9-15, Map 341W15BA 2100

That said trust deed was given to secure payment of the promissory note and to secure the performance of the obligations and covenants of Defendants Bucklin contained in said trust deed. Said trust deed was duly acknowledged in the manner required for recording and on October 24, 2007, was recorded in the Records of Jackson County, Oregon as number 2007-051493. That a copy of said trust deed is attached hereto, labeled Exhibit 9, and by this reference made a part hereof.

35.

On or about December 18, 2008 Plaintiff and Defendants Bucklin agreed to a change in terms which modified the maturity of the loan from October 20, 2008 to June 20, 2009 and set the variable interest rate at a floor of no less than 7%. A copy of said agreement is attached hereto, labeled Exhibit 10, and by this reference made a part hereof.

36.

That said promissory note and trust deed are in default in that Defendants Bucklin have failed and refused to pay the principal payment of $194,652.40 which payment was due in full on June 20, 2009 as well as failure to pay outstanding interest balance in the amount of $2,111.78 and late charges of $166.98.

Page 12 – COMPLAINT TO FORECLOSE ON REAL AND PERSONAL PROPERTY

37.

Under the provisions of said promissory note and trust deed, Plaintiff has and does elect to declare the entire balance of principal and interest now due and payable.

38.

That there is now owing on said promissory note and trust deed, from Defendants Bucklin, to Plaintiffs, the sum of $196,931.16, which amount is immediately due and payable, plus interest thereon at the variable default interest rate which is currently at 12% from June 20, 2009.

39.

That by the terms of said promissory note and trust deed, the Defendants Bucklin promised, in case action be instituted to collect said promissory note or to foreclose said trust deed, to pay such additional sum as the court may adjudge reasonable as attorney fees in said action and Plaintiff is thus entitled to reasonable attorney fees as determined by the court pursuant to ORCP 68.

40.

That by the terms of said trust deed, it was provided that the Defendants Bucklin would be liable to the Plaintiff for costs and expenses of the Trustee incurred in connection with or in enforcing the obligation together with Trustee's fees actually incurred.

41.

That by the terms of said trust deed, it was provided that if expense was incurred for the examination of the record affecting the title to said property, the

Page 13 – COMPLAINT TO FORECLOSE ON REAL AND PERSONAL PROPERTY

Defendants would be liable to the Plaintiffs for such expense. The Plaintiff has

incurred the expenses for examination of the record affecting the title of said property

which Defendants are required to pay under the note, which sum has not been paid

to the Plaintiff by Defendants.

42.

That there have been no other proceedings at law or otherwise for recovery of

the debt or any portion thereof owed under said promissory note and trust, and

Plaintiff has no adequate remedy at law.

SECOND CLAIM FOR RELIEF

(Foreclosure of Security Interest in Personal Property)

43.

Plaintiff realleges all previous paragraphs.

44.

At the same time and place that Defendants Bucklin made, executed, and

delivered said promissory note and trust deed to Plaintiff, said Defendants gave

Plaintiff a security interest in a manufactured dwelling located at 22266 Hwy 62,

Shady Cove, OR  97539 (1964 Vandy Mobile Home Serial Number

6G40C4020C2H131) to secure payment of the promissory note and to secure the

performance of the obligations and covenants contained in said trust deed, which

document is attached hereto as Exhibit 11, and by this reference incorporated herein.

45.

The security interest in the manufactured dwelling was timely perfected by

recording a security interest on the Oregon Vehicle Certificate of Title, and a copy of

Page 14 – COMPLAINT TO FORECLOSE ON REAL AND PERSONAL PROPERTY

the Power of Attorney appointing Plaintiff the power to transfer title are attached hereto, labeled Exhibits 12 and 13, and by this reference made a part hereof.

### COUNT FOUR

### FIRST CLAIM FOR RELIEF

### (Foreclosure of Trust Deed as Mortgage on Real Property)

46.

Within the State of Oregon, and for valuable consideration on or about September 12, 2005, Defendant Peter M. Bucklin (hereinafter Defendant Bucklin) made, executed, and delivered to Plaintiff, a Promissory Note in the principal sum of $236,000.00, a copy of which is attached hereto, labeled Exhibit 14, and by this reference made a part hereof, and that ever since said day, the Plaintiff has been, and now is, the sole owner and holder of that promissory note and the trust deed hereinafter alleged.

47.

At the same time and place that Defendant Bucklin made, executed, and delivered said promissory note, said Defendants made, executed, and delivered a trust deed to Plaintiff, as beneficiary, whereby said Defendant conveyed unto Lawyers Title Insurance Corporation, as trustee for Plaintiffs, the following described real property:

Lot Three hundred fifty-eight (358) in EAGLE POINT GOLF COMMUNITY, PHASE 12 in the City of Eagle Point, Jackson County, Oregon, according to the official plat thereof recorded in Volume 31, Page 34 Plat Records.

The Real Property or its address is commonly known as 54 Pebble Creek Drive, Eagle Point, OR 97524.

Page 15 – COMPLAINT TO FORECLOSE ON REAL AND PERSONAL PROPERTY

That said trust deed was given to secure payment of the promissory note and to secure the performance of the obligations and covenants of Defendant Bucklin contained in said trust deed.  Said trust deed was duly acknowledged in the manner required for recording and on September 22, 2005, was recorded in the  Records of Jackson County, Oregon as number 2005-057931.  A copy of said trust deed is attached hereto, labeled Exhibit 15, and by this reference made a part hereof.

48.

That said promissory note and trust deed are in default in that Defendant Bucklin has failed and refused to pay the principal payment of $226,910.49  which was due and payable in full on September 20, 2009 as well as its failure to pay required installments when due together with its failure to pay outstanding interest balance in the amount of $7,893.44 and late charges of $584.57.

49.

Under the provisions of said promissory note and trust deed, Plaintiff has and does elect to declare the entire balance of principal and interest now due and payable.

50.

That there is now owing on said promissory note and trust deed, from Defendant Bucklin, to Plaintiff, the sum of $235,388.50, which amount is immediately due and payable, plus interest thereon at the variable default rate of interest which is currently 12.625 percent per annum from September 20, 2009.

51.

That by the terms of said line of credit and trust deed, the Defendant Bucklin promised, in case action be instituted to collect said line of credit or to foreclose said

Page 16 -- COMPLAINT TO FORECLOSE ON REAL AND PERSONAL PROPERTY

1  trust deed, to pay such additional sum as the court may adjudge reasonable as

2  attorney fees in said action and plaintiff is thus entitled to reasonable attorney fees as

3  determined by the court pursuant to ORCP 68.

### 52.

That by the terms of said trust deed, it was provided that the Defendant Bucklin would be liable to the Plaintiff for costs and expenses of the Trustee incurred in connection with or in enforcing the obligation together with Trustee's fees actually incurred.

### 53.

That by the terms of said trust deed, it was provided that if expense was incurred for the examination of the record affecting the title to said property, the Defendant would be liable to the Plaintiff for such expense. The Plaintiff has incurred the expenses for examination of the record affecting the title of said property, which sum is due to Plaintiff under the note and has not been paid to the Plaintiff by Defendants.

### 54.

That there have been no other proceedings at law or otherwise for recovery of the debt or any portion thereof owed under said promissory note and trust, and Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff prays for a judgment and decree of this Court as follows:

1. COUNT ONE.

KELLINGTON, KRACK, RICHMOND, BLACKHURST & GLATTE, LLP
Attorneys at Law
23 NEWTOWN STREET, MEDFORD, OREGON, 97501
Telephone: (541) 779-5175 • Fax: (541) 779-5585

First Claim for Relief

1    a.    Granting judgment to Plaintiff against Defendant Peter M. Bucklin, in

2    the amount of $3,464,252.56, together with interest thereon at the current variable

3    default rate of interest of 11.5 percent per annum from September 24, 2009 until

4    paid, plus the sums for title expense incurred by Plaintiff, and for Plaintiff's costs and

5    disbursements including reasonable attorney fees as determined under ORCP 68.

6    b.    Declaring that the lien of the mortgage being foreclosed is a valid lien

7    against the real property above described, and declaring this lien to be superior to

8    any interest, lien, right, title, or claim of the defendants or any of them in the property.

9    c.    Foreclosing Plaintiff's lien and ordering the sale of the real property

10   described above by the Sheriff of Jackson County in the manner prescribed by law.

11   d.    Applying the proceeds received first toward the costs of sale, then

12   toward satisfaction of Plaintiff's judgment; and any surplus to the party or parties who

13   may establish their right thereto.

14   e.    If the proceeds of sale are insufficient to satisfy Plaintiff's judgment,

15   ordering that such deficiency may be enforced against Defendant Peter M. Bucklin

16   by execution as provided by law.

17   f.    Ordering that Defendants Peter M. Bucklin, Joan Bucklin, Jefferey

18   Iverson, Catherine Iverson and James Ollendick and all persons claiming through or

19   under them either as purchasers, encumbrancers, or otherwise are forever

20   foreclosed of all interest or claim in the real property except any statutory right of

21   redemption that Defendants may have in the real property.

22

23

24

25

26

Page 18 – COMPLAINT TO FORECLOSE ON REAL AND PERSONAL PROPERTY

g.    Providing that Plaintiff, or any other party to this suit, may become the purchaser at the sale of the real property and that the purchaser be decreed to be entitled to exclusive possession of the real property from the date of sale and shall be entitled to such remedies as are available at law to secure such possession, including a writ of assistance, if Defendants, or any of them, or any other party or person shall refuse to immediately surrender possession to the purchaser.

h.    Awarding such other relief as the Court may deem just and equitable in the premises.

Second Claim For Relief on Guarantee.

a.    Granting judgment to Plaintiff against Defendant Peter M. and Joan B. Bucklin Revocable Trust, in the amount of $3,464,252.56, together with interest thereon at the current variable default rate of interest of 11.5 percent per annum from September 24, 2009 until paid, plus the sums for title expense incurred by Plaintiff, and for Plaintiff's costs and disbursements including reasonable attorney fees as determined under ORCP 68.

2.    COUNT TWO.

First Claim for Relief

a.    Granting judgment to Plaintiffs against Defendants Peter M. Bucklin, Joan B. Bucklin, Robert V. Rowland and Eleanor E. Rowland, in the amount of $237,918.55, together with interest thereon at the variable default rate of interest of 12 percent per annum from June 20, 2009 until paid, plus the sums for title expense incurred by Plaintiff, and for Plaintiff's costs and disbursements including reasonable attorney fees as determined under ORCP 68.

Page 19 – COMPLAINT TO FORECLOSE ON REAL AND PERSONAL PROPERTY

b.      Declaring that the lien of the mortgage being foreclosed is a valid lien against the real property above described, and declaring this lien to be superior to any interest, lien, right, title, or claim of the defendants or any of them in the property.

c.      Foreclosing Plaintiff's lien and ordering the sale of the real property described above by the Sheriff of Jackson County in the manner prescribed by law.

d.      Applying the proceeds received first toward the costs of sale, then toward satisfaction of Plaintiff's judgment; and any surplus to the party or parties who may establish their right thereto.

e.      If the proceeds of sale are insufficient to satisfy Plaintiff's judgment, ordering that such deficiency may be enforced against Peter M. Bucklin, Joan B. Bucklin, Robert V. Rowland and Eleanor E. Rowland by execution as provided by law.

f.      Ordering that Defendants Peter M. Bucklin, Joan B. Bucklin, Robert V. Rowland and Eleanor E. Rowland and all persons claiming through or under them either as purchasers, encumbrances, or otherwise are forever foreclosed of all interest or claim in the real property except any statutory right of redemption that Defendants may have in the real property.

g.      Providing that Plaintiff, or any other party to this suit, may become the purchaser at the sale of the real property and that the purchaser be decreed to be entitled to exclusive possession of the real property from the date of sale and shall be entitled to such remedies as are available at law to secure such possession, including a writ of assistance, if Defendants, or any of them, or any other party or person shall refuse to immediately surrender possession to the purchaser.

Page 20 – COMPLAINT TO FORECLOSE ON REAL AND PERSONAL PROPERTY

h.    Awarding such other relief as the Court may deem just and equitable in the premises.

3.  COUNT THREE.

First Claim for Relief

a.    Granting judgment to Plaintiff against Defendants Peter M. Bucklin and Joan B. Bucklin, in the amount of $196,931.16, together with interest thereon at the variable default rate of interest of 12.00 percent per annum from June 20, 2009 until paid, plus the sums for title expense incurred by Plaintiff, and for Plaintiff's costs and disbursements including reasonable attorney fees as determined under ORCP 68.

b.    Declaring that the lien of the mortgage being foreclosed is a valid lien against the real property above described, and declaring this lien to be superior to any interest, lien, right, title, or claim of the defendants or any of them in the property.

c.    Foreclosing Plaintiff's lien and ordering the sale of the real property described above by the Sheriff of Jackson County in the manner prescribed by law.

d.    Applying the proceeds received first toward the costs of sale, then toward satisfaction of Plaintiff's judgment; and any surplus to the party or parties who may establish their right thereto.

e.    If the proceeds of sale are insufficient to satisfy Plaintiff's judgment, ordering that such deficiency may be enforced against Defendants Peter M. Bucklin and Joan B. Bucklin by execution as provided by law.

f.    Ordering that Defendants Peter M. Bucklin and Joan B. Bucklin and all persons claiming through or under them either as purchasers, encumbrancers, or

Page 21 – COMPLAINT TO FORECLOSE ON REAL AND PERSONAL PROPERTY

1  otherwise are forever foreclosed of all interest or claim in the real property except any

2  statutory right of redemption that Defendants may have in the real property.

3      g.    Providing that Plaintiff, or any other party to this suit, may become the

4  purchaser at the sale of the real property and that the purchaser be decreed to be

5  entitled to exclusive possession of the real property from the date of sale and shall

6  be entitled to such remedies as are available at law to secure such possession,

7  including a writ of assistance, if Defendants, or any of them, or any other party or

8
   person shall refuse to immediately surrender possession to the purchaser.
9

10      Second Claim for Relief (Foreclosure of Security Interest in Personal

11  Property)

12      a.    Foreclosing Plaintiff's security interest in the manufactured dwelling

13  described above by the Sheriff of Jackson County, Oregon, in the manner prescribed

14  by law.

15      b.    Applying the proceeds received first toward the costs of sale, then

16
   toward satisfaction of Plaintiff's judgment; and any surplus to the party or parties who
17

18  may establish their right thereto.

19      c.    If the proceeds of sale are insufficient to satisfy Plaintiff's judgment,

20  ordering that such deficiency may be enforced against Defendants Peter M. Bucklin

21  and Joan B. Bucklin by execution as provided by law.

22
        d.    Ordering that Defendants Peter M. Bucklin and Joan B. Bucklin and all
23

24  persons claiming through or under them either as purchasers, encumbrancers, or

25  otherwise are forever foreclosed of all interest or claim in the real property except any

26  statutory right of redemption that Defendants may have in the real property.

Page 22 – COMPLAINT TO FORECLOSE ON REAL AND PERSONAL PROPERTY

e.    Providing that Plaintiff, or any other party to this suit, may become the purchaser at the sale of the real property and that the purchaser be decreed to be entitled to exclusive possession of the real property from the date of sale and shall be entitled to such remedies as are available at law to secure such possession, including a writ of assistance, if Defendants, or any of them, or any other party or person shall refuse to immediately surrender possession to the purchaser.

f.    Awarding such other relief as the Court may deem just and equitable in the premises.

4. COUNT FOUR.

First Claim for Relief

a.    Granting judgment to Plaintiff against Defendant Peter M. Bucklin, in the amount of $235,388.50, together with interest thereon at the variable default rate of interest of 12.625 percent per annum from September 20, 2009 until paid, plus the sums for title expense incurred by Plaintiff, and for Plaintiff's costs and disbursements including reasonable attorney fees as determined under ORCP 68.

b.    Declaring that the lien of the mortgage being foreclosed is a valid lien against the real property above described, and declaring this lien to be superior to any interest, lien, right, title, or claim of the defendants or any of them in the property.

c .    Foreclosing Plaintiff's lien and ordering the sale of the real property described above by the Sheriff of Jackson County in the manner prescribed by law.

d.    Applying the proceeds received first toward the costs of sale, then toward satisfaction of Plaintiff's judgment; and any surplus to the party or parties who may establish their right thereto.

Page 23 – COMPLAINT TO FORECLOSE ON REAL AND PERSONAL PROPERTY

e.    If the proceeds of sale are insufficient to satisfy Plaintiff's judgment, ordering that such deficiency may be enforced against Defendant Peter M. Bucklin by execution as provided by law.

f.    Ordering that Defendant Peter M. Bucklin and all persons claiming through or under them either as purchasers, encumbrancers, or otherwise are forever foreclosed of all interest or claim in the real property except any statutory right of redemption that Defendants may have in the real property.

g.    Providing that Plaintiff, or any other party to this suit, may become the purchaser at the sale of the real property and that the purchaser be decreed to be entitled to exclusive possession of the real property from the date of sale and shall be entitled to such remedies as are available at law to secure such possession, including a writ of assistance, if Defendants, or any of them, or any other party or person shall refuse to immediately surrender possession to the purchaser.

h.    Awarding such other relief as the Court may deem just and equitable in the premises.

DATED:  October 8, 2009.

KELLINGTON, KRACK, RICHMOND,
BLACKHURST & GLATTE

By_____
Erik J. Glatte, OSB #95172
Of Attorneys for Plaintiffs
eglatte@kkrbg.com

THIS COMMUNICATION IS FROM A DEBT COLLECTOR.  THIS IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Page 24 – COMPLAINT TO FORECLOSE ON REAL AND PERSONAL PROPERTY

1  TRAINOR FAIRBROOK
   NANCY HOTCHKISS (SBN 107692)
2  DAVID W. CREEGGAN (SBN 234475)
   980 Fulton Avenue
3  Sacramento, California 95825-4558
   Telephone: (916) 929-7000
4  Facsimile: (916) 929-7111
   sjm:4990001.765612.1
5
   Attorneys for Plaintiff
6  PREMIERWEST BANK, an Oregon corporation

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          COUNTY OF SOLANO

10

11  PREMIERWEST BANK, an Oregon          Case No. FCS034851
    corporation,
12                                       COMPLAINT FOR JUDICIAL
                    Plaintiff,           FORECLOSURE OF REAL AND
13                                       PERSONAL PROPERTY UNDER DEED
    v.                                   OF TRUST AND SPECIFIC
14                                       PERFORMANCE OF RENTS AND
    PETER M. BUCKLIN; MICHAEL M.         PROFITS CLAUSE IN DEED OF TRUST
15  HARTMANN and KATIE M.
    HARTMANN, husband and wife; PETER    (THIS CASE IS NOT A LIMITED
16  M. BUCKLIN and JOAN B. BUCKLIN,      JURISDICTION CASE AND THE
    Trustees of the Peter M. and Joan B. DEMAND EXCEEDS $10,000.00)
17  Revocable Trust; CASCADE
    ACCEPTANCE CORPORATION, a
18  California corporation, and DOES 1
    through 20, inclusive,
19
                    Defendants.
20

21      Plaintiff complains and alleges as follows:

22      1.    Plaintiff PREMIERWEST BANK is, and at all times herein mentioned was, a

23  banking corporation, organized and existing under the laws of the State of Oregon and authorized

24  to do business in the State of California.

25      2.    Plaintiff is informed and believes and thereon alleges that Defendant PETER M.

26  BUCKLIN (hereinafter "Defendant BUCKLIN") is, and at all times herein mentioned was, a dual

27  resident of California and Oregon, doing business in Solano County, California.

28  COMPLAINT FOR JUDICIAL FORECLOSURE OF REAL AND PERSONAL                        -1-
    PROPERTY UNDER DEED OF TRUST AND SPECIFIC PERFORMANCE OF
    RENTS AND PROFITS CLAUSE IN DEED OF TRUST

FILED BY ONE LEGAL                                             EXHIBIT  2

ENDORSED FILED
ONTARIO SUPERIOR COURT

09 DEC 11  PM 2: 02

BY    S. WIDEMANN
           DEPUTY CLERK

ASSIGNED TO
JUDGE RAMONA J. GARRETT
FOR ALL PURPOSES
BY FAX
effective 1/4/2010

3.      Plaintiff is informed and believes and thereon alleges that Defendants MICHAEL M. HARTMANN and KATIE M. HARTMANN (hereinafter collectively "Defendants HARTMANN") are, and at all times herein mentioned were, residents of the County of San Mateo, and doing business in Solano County, California

4.      Plaintiff is informed and believes and thereon alleges that Defendants PETER M. BUCKLIN and JOAN B. BUCKLIN, Trustees of the Peter M. Bucklin and Joan B. Bucklin Revocable Trust (hereinafter collectively "Defendant TRUSTEES") are, and at all times herein mentioned were, dual residents of California and Oregon, doing business in Solano County, California.

5.      Plaintiff is informed and believes and thereon alleges that Defendant CASCADE ACCEPTANCE CORPORATION (hereinafter "Defendant CASCADE") is, and at all times herein mentioned was, a corporation originating and existing under the laws of the State of California.

6.      The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1 through 20, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as a fictitiously named Defendant is, in some manner, responsible for the events and happenings referred to, either contractually or tortiously, and that such fictitiously named Defendants have or claim to have some right, title or interest to the collateral set forth below, and/or the rents, issues, and profits from such collateral, which interest is subject and subsequent to the subject Deed of Trust described and defined herein below.

7.      The real property which is the subject of this action ("Subject Property"), is located within the County of Solano, California, and is commonly known as 211 Peabody Road, Vacaville, California. It consists of a "strip center", a small multi-tenanted retail property.

////

TRAINOR FAIRBROOK
Attorneys At Law
980 FULTON AVENUE
SACRAMENTO, CALIFORNIA 95825-4558
Telephone: (916) 929-7900
Facsimile: (916) 929-7111

8.    Plaintiff is informed and believes and thereon alleges that Defendants HARTMANN and TRUSTEES are the current record owners of the Subject Property which is located within the jurisdictional boundaries of this Court. Plaintiff is informed and believes and thereon alleges that Defendant TRUSTEES received their ownership interest in the Subject Property by grant deed from Defendant BUCKLIN on or about May 3, 2007. This Court is the proper Court for the trial of this action.

9.    Plaintiff is informed and believes and thereon alleges that all Defendants have or claim to have an interest in the Subject Property which is subordinate to the lien of Plaintiff's Deed of Trust as described below.

10.    Plaintiff is informed and believes and thereon alleges that except for Defendant CASCADE, each of the remaining Defendants was, at all times pertinent hereto, the agent, servant, employee, joint venturer and/or partner of each of the other co-Defendants, and in doing the things alleged hereinafter, each co-Defendant was acting within the scope of authority conferred upon that party by consent, approval and/or ratification, whether said authority was actual or apparent.

**FIRST CAUSE OF ACTION**
(Judicial Foreclosure Against Defendants Hartmann,
Trustees, Cascade, and Does 1 through 5)

11.    Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 10, inclusive, of this Complaint as though fully set forth herein.

12.    On or about November 10, 2006, for value received, Defendants BUCKLIN and HARTMANN and Does 1 through 5 made, executed, and delivered their Promissory Note (hereinafter referred to as the "Note") in favor of Plaintiff, whereby said Defendants agreed to pay Plaintiff the principal sum of $2,400,000.00, plus interest thereon and other charges in accordance with the terms of the Note. A true and correct copy of the Note is attached hereto as **Exhibit A** and incorporated herein by reference.

TRAINOR FAIRBROOK
Attorneys At Law
980 FULTON AVENUE
SACRAMENTO, CALIFORNIA 95825-4558
Telephone: (916) 929-7000
Facsimile: (916) 929-7111

COMPLAINT FOR JUDICIAL FORECLOSURE OF REAL AND PERSONAL PROPERTY UNDER DEED OF TRUST AND SPECIFIC PERFORMANCE OF RENTS AND PROFITS CLAUSE IN DEED OF TRUST

13.     Contemporaneously with the execution of the Note, Defendants BUCKLIN and HARTMANN executed and delivered a Construction Deed of Trust, inclusive of an assignment of rents ("Deed of Trust") in favor of Plaintiff, the beneficiary thereunder. The Deed of Trust granted to Plaintiff, among other things, a lien on the Subject Property and all rents, issues, and profits therefrom.

14.     The Deed of Trust was duly recorded in the official records of the office of the County Recorder of Solano County, California, on November 29, 2006, as document number 200600150309. A true and correct copy of the Deed of Trust is attached hereto as **Exhibit B** and incorporated herein by reference.

15.     Subsequent thereto, by modifications dated November 21, 2007, May 5, 2008, September 19, 2008 and December 24, 2008, the maturity date of said loan was extended on four separate occasions, the most recent of which expired on August 10, 2009.

16.     Subsequent to the recordation of the Deed of Trust referenced in Paragraphs 13 and 14 above, and in or about December, 2006, Defendants BUCKLIN and HARTMANN made, executed, and delivered to Defendant CASCADE their Promissory Note in the principal sum of $365,000.00, the terms of which are unknown, secured by a deed of trust on the Subject Property junior in priority to that held by Plaintiff.

17.     Plaintiff has duly performed all of the conditions precedent on its part required to be performed under all of the above-referenced loan documents.

18.     Defendants BUCKLIN and HARTMANN have defaulted under the terms of the Note and Deed of Trust by, among other things, failing to pay the principal which matured on August 10, 2009 and property taxes for the fiscal year 2007-2008, together with interest, late charges and other sums owed under the terms of the loan documents.

19.     Although Plaintiff has made demand upon Defendants BUCKLIN and HARTMANN to cure the defaults as set forth above, said Defendants have wholly failed, refused and neglected to cure said defaults.

COMPLAINT FOR JUDICIAL FORECLOSURE OF REAL AND PERSONAL                    -4-
PROPERTY UNDER DEED OF TRUST AND SPECIFIC PERFORMANCE OF
RENTS AND PROFITS CLAUSE IN DEED OF TRUST

TRAINOR FAIRBROOK
Attorneys at Law
980 FULTON AVENUE
SACRAMENTO, CALIFORNIA 95825-4558
Telephone: (916) 929-7000
Facsimile: (916) 929-7111

20.    As of October 15, 2009, the principal sum of $2,394,843.81 was due, owing and payable, plus accrued interest according to proof, late charges, and other sums, all according to the terms of the Note and Deed of Trust. As of October 15, 2009, the total sum required to pay off the subject loan, exclusive of attorneys' fees and court costs, was $2,601,033.00. The principal balance continues to accrue interest at the default rate set forth in the Note.

21.    Pursuant to the terms of the Note and Deed of Trust, Defendants BUCKLIN and HARTMANN are required to pay, and the interests of all Defendants are subject to, all expenses and costs incurred by Plaintiff in enforcing its rights under said loan documents and in protecting Plaintiff's collateral, including, but not limited to reasonable attorneys' fees and costs. Plaintiff has employed the law firm of Trainor Fairbrook of Sacramento, California, and will incur reasonable fees and costs for the prosecution of this action.

22.    By this action, Plaintiff seeks to judicially foreclose upon all of the collateral, real and personal, described in the Deed of Trust and assignment of rents, and to have said collateral sold under the laws of the State of California, with the proceeds of sale being applied to the obligation owed by Defendants BUCKLIN and HARTMANN under the Note. Plaintiff also seeks judgment against Defendants BUCKLIN and HARTMANN for the deficiency between the sale price of the Subject Property and the amount, inclusive of attorneys' fees and costs, due Plaintiff.

## SECOND CAUSE OF ACTION
### (Specific Performance of Rents and Profits Clause Contained in Deed of Trust and for Appointment of Receiver)

23.    Plaintiff incorporates herein by reference Paragraphs 1 through 10 of the introductory allegations and Paragraphs 11 through 22 of the First Cause of Action as if fully set forth herein.

24.    The Subject Property is a small, multi-tenant retail center, and is currently rented in whole or in part and generating rents. Plaintiff is informed and believes and thereon alleges that Defendants BUCKLIN, HARTMANN and TRUSTEES hold rents and security deposits from tenants, as security deposits are defined in the Civil Code.

TRAINOR FAIRBROOK
Attorneys At Law
980 FULTON AVENUE
SACRAMENTO, CALIFORNIA 95825-4558
Telephone: (916) 929-7000
Facsimile: (916) 929-7111

COMPLAINT FOR JUDICIAL FORECLOSURE OF REAL AND PERSONAL PROPERTY UNDER DEED OF TRUST AND SPECIFIC PERFORMANCE OF RENTS AND PROFITS CLAUSE IN DEED OF TRUST

-5-

TRAINOR FAIRBROOK
Attorneys at Law
980 FULTON AVENUE
SACRAMENTO, CALIFORNIA 95825-4559
Telephone: (916) 929-7000
Facsimile: (916) 929-7111

25. The Deed of Trust provides, in summary, that Plaintiff is entitled to the rents and revenues of the Subject Property even without default by the borrowers. Plaintiff has demanded the rents from the Subject Property from Defendants BUCKLIN, TRUSTEES, and HARTMANN. The Deed of Trust provides that in the event of a default, the lender may apply to any court having jurisdiction for the appointment of a receiver for the Subject Property to take possession of it, with power to protect and preserve same, operate it preceding foreclosure or sale, and collect the rents and apply same, over and above the costs of the receivership, against the indebtedness.

26. Defendants BUCKLIN, TRUSTEES, and/or HARTMANN are in control and management of the Subject Property and are using the property to their own exclusive and sole benefit in that said Defendants are collecting the rents and profits from the Subject Property and appropriating them to their own purposes rather than applying them to the debt. Plaintiff has demanded, pursuant to Plaintiff's Deed of Trust, that said Defendants turn over to Plaintiff all rents, and to allow Plaintiff to collect the rents, revenues, issues, and profits from the Property and to apply the same to the payment of the secured obligations. Plaintiff seeks the appointment of a receiver for the Property pendente lite and, thereafter, during the redemption period should Plaintiff become the purchaser at the judicial foreclosure sale prayed for herein for the purposes described herein.

27. Plaintiff has no adequate remedy at law to enforce the foregoing provisions.

28. The consideration received by or for the benefit of Defendants BUCKLIN and HARTMANN for their Note was the proceeds of a loan represented by the Note, received as part of a financing transaction at the time the above-described transaction was entered into and the Note and Deed of Trust are just and reasonable.

29. By failing to turn over the rents from the Subject Property, Defendants BUCKLIN, TRUSTEES and HARTMANN have interfered with Plaintiff's right to collection of the rents, revenues, issues and profits under the Deed of Trust.

COMPLAINT FOR JUDICIAL FORECLOSURE OF REAL AND PERSONAL    -6-
PROPERTY UNDER DEED OF TRUST AND SPECIFIC PERFORMANCE OF
RENTS AND PROFITS CLAUSE IN DEED OF TRUST

30.     Plaintiff is informed and believes and thereon alleges that said Defendants intend to continue to collect the rents and profits from the Subject Property and to appropriate them for their own purposes rather than apply them to Plaintiff's Note and Deed of Trust unless the receiver is appointed pendente lite.

31.     Plaintiff further seeks appointment of the receiver to take possession of the Property, including, but not limited to, all personal property connected therewith, and to protect, conserve, and maintain it as a man of reasonable prudence would do with his own property.

WHEREFORE, Plaintiff prays judgment against defendants as follows:

On the First Cause of Action:

1.     For a determination that principal in the sum of $2,394,843.81 is due under the Note, together with any advances made by Plaintiff to protect its collateral and interest accrued thereon, plus interest, late charges, and other sums as provided in the Note, according to proof, to date of entry of judgment;

2.     Adjudging that the Deed of Trust be foreclosed and that judgment be made for the sale of the real property referenced therein according to law by a commissioner to be appointed by the court; that the proceeds of the sale be applied in payment of the amounts due to Plaintiff; that Defendants and all persons claiming under them, subsequent to the execution of the Deed of Trust, whether lien claimants, judgment creditors, claimants under junior deed of trust, purchasers, encumbrances or otherwise, be barred and foreclosed from all rights, claims, interest or equities of redemption in said real property and every part thereof when time for redemption has elapsed;

3.     Permitting Plaintiff and any party to this action to become a purchaser at the foreclosure sale;

4.     For a determination that when the time for redemption has elapsed, the commissioner execute a deed to the purchaser(s) of the collateral at the sale, and that the purchaser(s) be given possession thereof upon production of the commissioner's deed;

TRAINOR FAIRBROOK
Attorney At Law
980 FULTON AVENUE
SACRAMENTO, CALIFORNIA 95825-4558
Telephone: (916) 929-7000
Facsimile: (916) 929-7111

COMPLAINT FOR JUDICIAL FORECLOSURE OF REAL AND PERSONAL PROPERTY UNDER DEED OF TRUST AND SPECIFIC PERFORMANCE OF RENTS AND PROFITS CLAUSE IN DEED OF TRUST

-7-

5.    For an award of reasonable attorneys' fees in the enforcement of the obligation and the protection of Plaintiff's interest in the collateral in a reasonable sum, to be added to the amounts due under the Note;

6.    For a determination that Defendants BUCKLIN and HARTMANN are liable for the payment of the sums secured by the Deed of Trust as provided for in the Note and that a deficiency judgment be ordered following proceedings prescribed by law;

On the Second Cause of Action:

7.    For appointment of a receiver, pendente lite and permanently, to take possession of the Subject Property, granting power to said receiver to protect, conserve, and maintain same and to collect rents from existing tenants and to hold any rents, issues and profits pending an order of this Court; and to apply the net proceeds thereof to any deficiency determined to exist pursuant to proceedings regarding the First Cause of Action herein;

8.    For an order allowing the receiver to be compensated as his usual hourly rate from the rent proceeds and to be reimbursed for all out-of-pocket expenses reasonably incurred, or in the alternative, for an order allowing the receiver to recover an amount approved by the Court according to proof of work performed from time to time.

9.    For an order that Defendants BUCKLIN, TRUSTEES and HARTMANN and anyone hold under or taking from them, whether as assignees, agents, transferees, junior lienholders, or otherwise, deliver possession of the Subject Property, and the rents and profits therefrom, and any and all security deposits, to the Court-appointed receiver;

10.    That should Plaintiff become the purchaser of the Subject Property, the receiver continue his duties enumerated herein during the redemption period following the judicial sale prayed for in the First Cause of Action herein;

11.    For a temporary restraining order, a preliminary injunction, and a permanent injunction enjoining Defendants, their agents, servants, employees, successors, assigns, heirs, executors, and administrators, and all persons acting under, in concert with, or for them, as set

TRAINOR FAIRBROOK
Attorneys At Law
980 FULTON AVENUE
SACRAMENTO, CALIFORNIA 95825-4558
Telephone: (916) 929-7000
Facsimile: (916) 929-7111

1  forth in the order to show cause and temporary restraining order filed herein, and incorporated

2  herein by reference;

3  On Both Causes of Action:

4       12.    For reasonable attorneys' fees;

5       13.    For costs of suit incurred herein; and

6       14.    For such other and further relief as the Court may deem just and proper.

7  Dated: December 3, 2009                          TRAINOR FAIRBROOK

8

9                                          By: _Nancy Hotchkiss_

10                                              NANCY HOTCHKISS

11

12

TRAINOR FAIRBROOK
Attorneys At Law
980 FULTON AVENUE
SACRAMENTO, CALIFORNIA 95825-4559
Telephone: (916) 929-7000
Facsimile: (916) 929-7111

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR JUDICIAL FORECLOSURE OF REAL AND PERSONAL              -9-
PROPERTY UNDER DEED OF TRUST AND SPECIFIC PERFORMANCE OF
RENTS AND PROFITS CLAUSE IN DEED OF TRUST

## VERIFICATION

I, Nancy Hotchkiss, declare:

I am an attorney at law duly admitted and licensed to practice before all of the Courts of this State and I have my professional office at Trainor Fairbrook, 980 Fulton Avenue, Sacramento, California. I am the attorney of record for the Plaintiff herein.

Plaintiff is absent from the county in which I have my office and for that reason, I am making this verification on Plaintiff's behalf.

I have read the foregoing Complaint for Judicial Foreclosure of Real and Personal Property Under Deed of Trust and Specific Performance of Rents and Profits Clause in Deed of Trust and know the contents thereof. The same is true of my own knowledge except as to those matters which are therein stated upon my information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this verification was executed on December 3, 2009, at Sacramento, California.

_____
NANCY HOTCHKISS

COMPLAINT FOR JUDICIAL FORECLOSURE OF REAL AND PERSONAL PROPERTY UNDER DEED OF TRUST AND SPECIFIC PERFORMANCE OF RENTS AND PROFITS CLAUSE IN DEED OF TRUST

-10-

TRAINOR FAIRBROOK
Attorney At Law
980 FULTON AVENUE
SACRAMENTO, CALIFORNIA 95825-4555
Telephone: (916) 929-7000
Facsimile: (916) 929-7111

# EXHIBIT A

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,400,000.00 | 11-10-2006 | 11-10-2007 | 5630552 | 150 / 116 | 98176 | DM632 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing " * * * *" has been omitted due to text length limitations.

Borrower:   Peter M. Bucklin, Michael Hartman and Katie
            Hartman
            485 Ormsby Lane
            Petaluma, CA 94954

Lender:   PremierWest Bank
          Southern Oregon Loan Production Office
          P O Box 40
          503 Airport Road
          Medford, OR 97501
          (541) 282-5200

Principal Amount: $2,400,000.00          Initial Rate: 8.750%          Date of Note: November 10, 2006

PROMISE TO PAY. Peter M. Bucklin, Michael Hartman and Katie Hartman ("Borrower") jointly and severally promise to pay to PremierWest Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Million Four Hundred Thousand & 00/100 Dollars ($2,400,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

PAYMENT. Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on November 10, 2007. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning December 10, 2006, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

VARIABLE INTEREST RATE. The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Prime Rate as published in the Western Edition of the Wall Street Journal. When a range of rates has been published, the higher of the rates will be used (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 8.250% per annum. The interest rate to be applied to the unpaid principal balance during this Note will be at a rate of 0.500 percentage points over the Index, resulting in an initial rate of 8.750% per annum. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

PREPAYMENT. Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or, as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: PremierWest Bank, Southern Oregon Loan Production Office, P O Box 40, 503 Airport Road, Medford, OR 97501.

INTEREST RESERVES. Borrower authorizes Lender to place $175,000.00 of the Principal Amount as an interest reserve, which is an estimate of the interest due on the Note ("Interest Reserve"). Borrower may pay interest due directly to Lender. In the event Borrower does not make an interest payment, Lender may automatically deduct the interest due from the Interest Reserve on the day the payment is due. Interest will accrue, as described in this Note, on amounts deducted from the Interest Reserve. In the event the interest due under this Note exceeds the Interest Reserve, Borrower will pay accrued unpaid interest when due according to the terms of this Note. Upon maturity, Lender will not advance or disburse the remaining Interest Reserve, if any, to Borrower. The principal due upon maturity will not include any remaining Interest Reserve.

LATE CHARGE. If a payment is 15 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment.

INTEREST AFTER DEFAULT. Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by adding a 5.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

DEFAULT. Each of the following shall constitute an event of default ("Event of Default") under this Note:

Payment Default. Borrower fails to make any payment when due under this Note.

Other Defaults. Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

Default in Favor of Third Parties. Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

Environmental Default. Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any loan.

False Statements. Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

Death or Insolvency. The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

Creditor or Forfeiture Proceedings. Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

Events Affecting Guarantor. Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party or any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender; and, in doing so, cure any Event of Default.

Adverse Change. A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

Insecurity. Lender in good faith believes itself insecure.

Cure Provisions. If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

LENDER'S RIGHTS. Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest

PROMISSORY NOTE
(Continued)

Loan No: 583056223                                                                                                    Page 2

immediately due, and then Borrower will pay that amount.

ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Oregon without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Oregon.

DISHONORED ITEM FEE. Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any, and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

COLLATERAL. Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

    (A)  a Construction Deed of Trust dated November 10, 2005, to a trustee in favor of Lender on real property located in Solano County, State of California. That agreement contains the following due on sale provision: Lender may, at Lender's option, declare immediately due and payable all sums secured by the Construction Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale" or "transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property; or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Oregon law.

    (B)  an Assignment of All Rents to Lender on real property located in Solano County, State of California.

LINE OF CREDIT. This Note evidences a straight line of credit. Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances. The following person currently is authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of his or her authority: Peter M. Bucklin. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender, regardless of the fact that persons other than those authorized to borrow have authority to draw against the accounts. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

REFERENCE PARAGRAPH HEADING RIGHT OF SETOFF.
IT IS HEREBY AGREED THAT ANY LANGUAGE CONTAINED IN THIS PARAGRAPH DOES NOT APPLY TO THIS TRANSACTION.

SUCCESSOR INTERESTS. The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

GENERAL PROVISIONS. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

UNDER OREGON LAW, MOST AGREEMENTS, PROMISES AND COMMITMENTS MADE BY US (LENDER) CONCERNING LOANS AND OTHER CREDIT EXTENSIONS WHICH ARE NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES OR SECURED SOLELY BY THE BORROWER'S RESIDENCE MUST BE IN WRITING, EXPRESS CONSIDERATION AND BE SIGNED BY US TO BE ENFORCEABLE.

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

X _____                          X _____
   Peter M. Bucklin                                    Michael Hartman


X _____
   Katie Hartman

LASER PRO Lending, Ver. 5.33.00.004  Copr. Harland Financial Solutions, Inc. 1997, 2005.  All Rights Reserved.  - OR  C:\HFS\CFI\LPL\D20.FC  TR-41517  PR-7

# EXHIBIT B

06-14787

Recorded In Official Record    ane County          11/29/2006
                                                      8:00 AM
Marc C. Tonnesen                                      AR59
Assessor/Recorder                                     3V

06- Placer Title Co

Doc#: 200600150309          Titles: 1    Pages: 14

                            Fees      48.00
                            Taxes      0.00
                            Other      0.00
                            PAID      $48.00

RECORDATION REQUESTED BY:
    PremierWest Bank
    Southern Oregon Loan Production Office
    P O Box 40
    503 Airport Road
    Medford, OR 97501

WHEN RECORDED MAIL TO:
    PremierWest Bank
    ATTN:Loan Assistant
    P.O Box 40
    Medford, OR 97501

SEND TAX NOTICES TO:
    Peter M. Bucklin, Michael Hartman and Katie Hartman
    485 Ormsby Lane
    Petaluma, CA 94954

1000100004-058 bsp

FOR RECORDER'S USE ONLY

## CONSTRUCTION DEED OF TRUST

MAXIMUM LIEN. The lien of this Deed of Trust shall not exceed at any one time $2,400,000.00.

THIS DEED OF TRUST is dated November 10, 2006, among Peter M. Bucklin, a married man as his sole and separate property as to an undivided 50% interest and Michael Hartman and Katie Hartman, husband and wife, as community property with right of survivorship as to an undivided 50% interest ("Trustor"); PremierWest Bank, whose address is Southern Oregon Loan Production Office, P.O Box 40, 503 Airport Road, Medford, OR 97501 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Placer Title Company, whose address is 1300 Oliver Rd, Ste. 230, Fairfield, CA 94534 (referred to below as "Trustee").

CONVEYANCE AND GRANT. For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Solano County, State of California:

See Exhibit "A", which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

The Real Property or its address is commonly known as 211 Peabody Road, Vacaville, CA 95687. The Assessor's Parcel Number for the Real Property is 0131-160-250.

FUTURE ADVANCES. In addition to the Note, this Deed of Trust secures all future advances made by Lender to Trustor whether or not the advances are made pursuant to a commitment. Specifically, without limitation, this Deed of Trust secures, in addition to the amounts specified in the Note, all future amounts Lender in its discretion may loan to Trustor, together with all interest thereon.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF THE TRUSTOR UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS ALSO GIVEN TO SECURE ANY AND ALL OF TRUSTOR'S OBLIGATIONS UNDER THAT CERTAIN CONSTRUCTION LOAN AGREEMENT BETWEEN TRUSTOR AND LENDER OF EVEN DATE HEREWITH: ANY EVENT OF DEFAULT UNDER THE CONSTRUCTION LOAN AGREEMENT, OR ANY OF THE RELATED DOCUMENTS REFERRED TO THEREIN, SHALL ALSO BE AN EVENT OF DEFAULT UNDER THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Note, this Deed of Trust, and the Related Documents.

CONSTRUCTION MORTGAGE. This Deed of Trust is a "construction mortgage" for the purposes of Sections 9-334 and 2A-309 of the Uniform Commercial Code, as those sections have been adopted by the State of California.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

Possession and Use. Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property;

DEED OF TRUST
(Continued)

Loan No: 583056223

(2)  use, operate or manage the Property; and  (3)  collect the Rents from the Property.

**Duty to Maintain.**  Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.**  Trustor represents and warrants to Lender that:  (1)  During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property;  (2)  Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing,  (a)  any breach or violation of any Environmental Laws,  (b)  any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or  (c)  any actual or threatened litigation or claims of any kind by any person relating to such matters; and  (3)  Except as previously disclosed to and acknowledged by Lender in writing,  (a)  neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and  (b)  any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws.  Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust.  Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person.  The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances.  Trustor hereby  (1)  releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and  (2)  agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor.  The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.**  Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property.  Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.**  Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent.  As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.**  Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.**  Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act.  Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized.  Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.**  Trustor agrees neither to abandon or leave unattended the Property.  Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**Construction Loan.**  If some or all of the proceeds of the loan creating the Indebtedness are to be used to construct or complete construction of any Improvements on the Property, the Improvements shall be completed no later than the maturity date of the Note (or such earlier date as Lender may reasonably establish) and Trustor shall pay in full all costs and expenses in connection with the work.  Lender will disburse loan proceeds under such terms and conditions as Lender may deem reasonably necessary to insure that the interest created by this Deed of Trust shall have priority over all possible liens, including those of material suppliers and workmen.  Lender may require, among other things, that disbursement requests be supported by receipted bills, expense affidavits, waivers of liens, construction progress reports, and such other documentation as Lender may reasonably request.

**DUE ON SALE - CONSENT BY LENDER.**  Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property.  A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property.  However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**TAXES AND LIENS.**  The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.**  Trustor shall pay when due (and in all events ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property.  Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

DEED OF TRUST
(Continued)

Right to Contest. Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or, if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

Evidence of Payment. Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

Notice of Construction. Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

PROPERTY DAMAGE INSURANCE. The following provisions relating to insuring the Property are a part of this Deed of Trust.

Maintenance of Insurance. Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the improvements on the Real Property. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

Application of Proceeds. Trustor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If the proceeds are to be applied to restoration and repair, Trustor shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the indebtedness. If Lender holds any proceeds after payment in full of the indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

Trustor's Report on Insurance. Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

LENDER'S EXPENDITURES. If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will: (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right will be in addition to all other rights and remedies to which Lender may be entitled upon Default.

WARRANTY; DEFENSE OF TITLE. The following provisions relating to ownership of the Property are a part of this Deed of Trust:

Title. Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

DEED OF TRUST
(Continued)

Defense of Title. Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

Compliance With Laws. Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

Survival of Representations and Warranties. All representations, warranties, and agreements made by Trustor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Trustor's Indebtedness shall be paid in full.

CONDEMNATION. The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust:

Proceedings. If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

Application of Net Proceeds. If any award is made or settlement entered into in any condemnation proceedings affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES. The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

Current Taxes, Fees and Charges. Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

Taxes. The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustor.

Subsequent Taxes. If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

SECURITY AGREEMENT; FINANCING STATEMENTS. The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

Security Agreement. This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

Security Interest. Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

Addresses. The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

FURTHER ASSURANCES; ATTORNEY-IN-FACT. The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

Further Assurances. At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

Attorney-In-Fact. If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name

# DEED OF TRUST
## (Continued)

of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Trustor pays all the Indebtedness, including without limitation all future advances, when due, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Trustor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Trustor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Trustor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**Default in Favor of Third Parties.** Should Trustor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Trustor's property or Trustor's ability to repay the Indebtedness or perform their respective obligations under this Deed of Trust or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Trustor or on Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Trustor, the insolvency of Trustor, the appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Trustor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Trustor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Trustor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Trustor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Trustor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Trustor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Trustor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust, after Trustor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Foreclosure by Sale.** Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire Indebtedness secured by

this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all other sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law.

**Collect Rents.** Lender shall have the right, without notice to Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of

DEED OF TRUST
(Continued)

Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of Solono County, State of California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**NOTICES.** Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Trustor requests that copies of any notices of default and sale be directed to Trustor's address shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors.

**STATEMENT OF OBLIGATION FEE.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**EVENT OF DEFAULT PROVISION.** As additional security for the payment and performance of the obligations secured hereby, Trustor hereby (a) grants to Beneficiary a security interest in all depository account balances, cash and any and all other property of Trustor now or hereafter in the possession of Beneficiary and (b) acknowledges and agrees that Beneficiary shall have the right to refuse to allow withdrawals from any such account. Trustor with Beneficiary during the continuation of any Event of Default.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Property, this Deed of Trust will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the State of California. In all other respects, this Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Oregon without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Deed of Trust is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Deed of Trust has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of Oregon.

**Joint and Several Liability.** All obligations of Trustor under this Deed of Trust shall be joint and several, and all references to Trustor shall mean each and every Trustor. This means that each Trustor signing below is responsible for all obligations in this Deed of Trust.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is

DEED OF TRUST
(Continued)

required in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means PremierWest Bank, and its successors and assigns.

**Borrower.** The word "Borrower" means Peter M. Bucklin, Michael Hartman and Katie Hartman and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto or intended to protect human health or the environment.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Document and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision of this Deed of Trust, together with all interest thereon.

**Lender.** The word "Lender" means PremierWest Bank, its successors and assigns.

**Note.** The word "Note" means the promissory note dated November 10, 2006, in the original principal amount of $2,400,000.00 from Trustor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of this Deed of Trust is November 10, 2007. NOTICE TO TRUSTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property. The words "Personal Property" also include all tangible and intangible items obtained or owned by, or in the possession of Trustor that are directly or indirectly related to the acquisition, development, design, construction, permitting, marketing, or habitation of the Real Property or the improvements to be constructed on the Real Property, whether heretofore or hereafter issued, prepared, or executed, including without limitation all permits, licenses, authorizations and approvals, trademarks and tradenames, and any and all land use entitlements, development rights, sewer capacity, approvals, density allocations and other rights or approvals relating to or authorizing

the development or occupancy of the Property, plus all utility or other deposits, reimbursement rights, studies, tests, contracts, plans and specifications, relating to the Property and Improvements.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustee.** The word "Trustee" means Placer Title Company, whose address is 1300 Oliver Rd, Ste. 230, Fairfield, CA 94534 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means Peter M. Bucklin, Michael Hartman and Katie Hartman.

EACH TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND EACH TRUSTOR AGREES TO ITS TERMS, INCLUDING THE VARIABLE RATE PROVISIONS OF THE NOTE SECURED BY THIS DEED OF TRUST.

TRUSTOR:

X _____
Peter M. Bucklin

X _____
Michael Hartman

X _____
Katie Hartman

---

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF ___California___ )
) SS
COUNTY OF ___Sonoma___ )

On ___Nov. 21___, 20 ___06___, before me, ___C. Dolcini A Notary Public___,
_____ (here insert name and title of the officer)
personally appeared Peter M. Bucklin, Michael Hartman, and Katie Hartman, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____                    (Seal)

C. DOLCINI
COMM. #1534065
NOTARY PUBLIC - CALIFORNIA
SONOMA COUNTY
My Comm. Expires December 12, 2008

DEED OF TRUST
(Continued)

(DO NOT RECORD)
REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: _____, Trustee

The undersigned is the legal owner and holder of all indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

Date: _____        Beneficiary: _____

                                                By: _____

                                                Its: _____

LASER PRO Lending, Ver. 5.34.00.004  Copr. Harland Financial Solutions, Inc. 1997, 2006.  All Rights Reserved.  - OR/OH  C:\HARLAND\CFI\LPL\G01.FC  TR-66233  PR-3

CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of __California__

County of __Sonoma__

On __November 8, 2006__ before me, __S. Palombino, Notary Public__
DATE                                NAME, TITLE OF OFFICER

personally appeared __Peter M. Bucklin__
NAME(S) OF SIGNER(S)

☑ Personally known to me   OR ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledge to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

S. PALOMBINO
COMM. #1528059
NOTARY PUBLIC · CALIFORNIA
SONOMA COUNTY
My Comm. Expires November 16, 2008

WITNESS my hand and official seal

_____
SIGNATURE OF NOTARY

OPTIONAL

Though the data below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent reattachment of this form.

CAPACITY CLAIMED BY SIGNED

☐ INDIVIDUAL
☐ CORPORATE OFFICER
_____
TITLE(S)
☐ PARTNER(S)  ☐ LIMITED
            ☐ GENERAL
☐ ATTORNEY-IN-FACT
☐ TRUSTEE(S)
☐ GUARDIAN/CONSERVATOR
☐ OTHER: _____

SIGNER IS REPRESENTING:

DESCRIPTION OF ATTACHED DOCUMENT

_____
TITLE OR TYPE OF DOCUMENT

_____
NUMBER OF PAGES

_____
DATE OF DOCUMENT

_____
SIGNER(S) OTHER THAN NAMED ABOVE

Order No.  506-19989

EXHIBIT "A"
LEGAL DESCRIPTION

THE LAND DESCRIBED HEREIN IS SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF SOLANO, CITY OF VACAVILLE, AND IS DESCRIBED AS FOLLOWS:

PARCEL ONE:

PARCEL 2A, AS SHOWN ON THE PARCEL MAP OF THE LANDS OF BUCKLIN AND FISHEL, FILED FOR RECORD ON AUGUST 2, 2004 IN BOOK 45 OF PARCEL MAPS, AT PAGE 83, SOLANO COUNTY RECORDS.

PARCEL TWO:

A PRIVATE STORM DRAINAGE EASEMENT, APPURTENANT TO PARCEL ONE ABOVE, ACROSS EXISTING STORM DRAINAGE FACILITIES OVER AND ACROSS LOT 1, AS SHOWN ON THE AMENDED MAP OF SHASTA PARK, FILED FEBRUARY 13, 1981 IN BOOK 40 OF MAPS, PAGE 88, AS CONVEYED IN THE GRANT DEED EXECUTED BY SHASTA PARK TOWNHOUSE ASSOCIATION, A NON-PROFIT MUTUAL BENEFIT CORPORATION TO PEABODY SELF STORAGE, A CALIFORNIA LIMITED PARTNERSHIP, RECORDED MAY 14, 2002 AS INSTRUMENT NO. 2002-00080500, SOLANO COUNTY RECORDS.

PARCEL THREE:

A DRAINAGE EASEMENT, APPURTENANT TO PARCEL ONE ABOVE, DESIGNATED AND DELINEATED AS A "5' WIDE DRAINAGE EASEMENT", OVER AND ACROSS PARCEL 1, AS SHOWN ON THE PARCEL MAP FILED SEPTEMBER 24, 2002 IN BOOK 43 OF PARCEL MAPS, AT PAGE 71, SOLANO COUNTY RECORDS.

PARCEL FOUR:

A PRIVATE ACCESS EASEMENT, APPURTENANT TO PARCEL ONE ABOVE, DESIGNATED AND DELINEATED AS "ACCESS EASEMENT", OVER AND ACROSS PARCEL 1 AS SHOWN ON THE PARCEL MAP FILED SEPTEMBER 24, 2002 IN BOOK 43 OF PARCEL MAPS, AT PAGE 71, SOLANO COUNTY RECORDS.

APN: 0131-180-250

CLTA Preliminary Report

Government Code 27361.7

I certify under penalty of perjury that the notary seal on the document to which this statement is attached reads as follows:

Name of Notary _S. PALOMBINO_

Commission Number _1528059_

Place of Execution _SONOMA_

Date Commission Expires _November 19, 2008_

Date: _Nov. 28 2006_      _Marcia A Hulse_
                              Signature

                              PLACER TITLE

H:\recorder\forms\notary seal.

State of California
County of _Sonoma_

On _November 8, 20_ before me; _S. Palombino_____, Notary Public,
personally appeared _Peter M. Bucklin_____
Personally known to me (or proved to me on the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to
me that he/she/they executed the same in his/her/their authorized capacity(ies), and that
by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.
Witness my hand and official seal.
_____(seal)
Signature of Notary

"I certify under penalty of perjury that the foregoing is a true and accurate legible
translation of the original _Acknowledgement_____ to which it is attached.

Placer Title Company

END OF
DOCUMENT