48904859S

53

Jackson Cc    Official Records    2006-044584
SR
Sin=4 SHAWBJ    09/01/2006 08:00:00 AM
$25.00 $5.00$11.00    Total:$41.00

0121564020060045040050051

I, Kathleen S. Beckett, County Clerk for Jackson County, Oregon, certify that the instrument identified herein was recorded in the Clerk records.    Kathleen S. Beckett - County Clerk

RECORDATION REQUESTED BY:
PremierWest Bank
Loan Production Center-Medford
P O Box 40
503 Airport Road
Medford, OR 97501

WHEN RECORDED MAIL TO:
PremierWest Bank
ATTN:Loan Assistant
P O Box 40
Medford, OR 97501

SEND TAX NOTICES TO:
Peter Bucklin, Joan Bucklin and James Oilendick
485 Ormsby Lane
Petaluma, CA 94954

8.00

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY

## ASSIGNMENT OF RENTS

THIS ASSIGNMENT OF RENTS dated August 24, 2006, is made and executed between Peter Bucklin and Joan Bucklin, as tenants by the entirety, as to an 88% interest and James Oilendick as to the remainder (referred to below as "Grantor") and PremierWest Bank, whose address is P O Box 40, 503 Airport Road, Medford, OR 97501 (referred to below as "Lender").

ASSIGNMENT. For valuable consideration, Grantor hereby assigns, grants a continuing security interest in, and conveys to Lender all of Grantor's right, title, and interest in and to the Rents from the following described Property located in Jackson County, State of Oregon:

Parcels No. One (1) and Two (2) of Partition Plat No. P-45-2006, recorded May 19, 2006, in Record of Partition Plats in Jackson County, Oregon, and filed as Survey No. 19191, in the Office of the County Surveyor.

The Property or its address is commonly known as 10522, 10514 and 10648 Hwy 62, Eagle Point, OR 97524. The Property tax identification number is 10239255; 10983554; 10983555.

FUTURE ADVANCES. In addition to the Note, this Assignment secures all future advances made by Lender to Grantor whether or not the advances are made pursuant to a commitment. Specifically, without limitation, this Assignment secures, in addition to the amounts specified in the Note, all future amounts Lender in its discretion may loan to Borrower, together with all interest thereon.

THIS ASSIGNMENT IS GIVEN TO SECURE (1) PAYMENT OF THE INDEBTEDNESS AND (2) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF BORROWER AND GRANTOR UNDER THE NOTE, THIS ASSIGNMENT, AND THE RELATED DOCUMENTS. THIS ASSIGNMENT IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

GRANTOR'S WAIVERS. Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

BORROWER'S WAIVERS AND RESPONSIBILITIES. Lender need not tell Borrower about any action or inaction Lender takes in connection with this Assignment. Borrower assumes the responsibility for being and keeping informed about the Property. Borrower waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the Property, or any delay by Lender in realizing upon the Property. Borrower agrees to remain liable under the Note with Lender no matter what action Lender takes or fails to take under this Assignment.

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Assignment or any Related Documents, Grantor shall pay to Lender all amounts secured by this Assignment as they become due, and shall strictly perform all of Grantor's obligations under this Assignment. Unless and until Lender exercises its right to collect the Rents as provided below and so long as there is no default under this Assignment, Grantor may remain in possession and control of and operate and manage the Property and collect the Rents, provided that the granting of the right to collect the Rents shall not constitute Lender's consent to the use of cash collateral in a bankruptcy proceeding.

GRANTOR'S REPRESENTATIONS AND WARRANTIES. Grantor warrants that:

Ownership. Grantor is entitled to receive the Rents free and clear of all rights, loans, liens, encumbrances, and claims except as disclosed to and accepted by Lender in writing.

Right to Assign. Grantor has the full right, power and authority to enter into this Assignment and to assign and convey the Rents to Lender.

No Prior Assignment. Grantor has not previously assigned or conveyed the Rents to any other person by any instrument now in force.

No Further Transfer. Grantor will not sell, assign, encumber, or otherwise dispose of any of Grantor's rights in the Rents except as provided in this Assignment.

LENDER'S RIGHT TO RECEIVE AND COLLECT RENTS. Lender shall have the right at any time, and even though no default shall have occurred under this Assignment, to collect and receive the Rents. For this purpose, Lender is hereby given and granted the following rights, powers and authority:

Notice to Tenants. Lender may send notices to any and all tenants of the Property advising them of this Assignment and directing all Rents to be paid directly to Lender or Lender's agent.

Enter the Property. Lender may enter upon and take possession of the Property; demand, collect and receive from the tenants or from any other persons liable therefor, all of the Rents; institute and carry on all legal proceedings necessary for the protection of the Property, including such proceedings as may be necessary to recover possession of the Property; collect the Rents and remove any tenant or tenants or other persons from the Property.

Maintain the Property. Lender may enter upon the Property to maintain the Property and keep the same in repair; to pay the costs thereof and of all services of all employees, including their equipment, and of all continuing costs and expenses of maintaining the Property in proper repair and condition, and also to pay all taxes, assessments and water utilities, and the premiums on fire and other insurance effected by Lender on the Property.

Compliance with Laws. Lender may do any and all things to execute and comply with the laws of the State of Oregon and also all other laws, rules, orders, ordinances and requirements of all other governmental agencies affecting the Property.

Lease the Property. Lender may rent or lease the whole or any part of the Property for such term or terms and on such conditions as Lender may deem appropriate.

Employ Agents. Lender may engage such agent or agents as Lender may deem appropriate, either in Lender's name or in Grantor's name, to rent and manage the Property, including the collection and application of Rents.

Other Acts. Lender may do all such other things and acts with respect to the Property as Lender may deem appropriate and may act exclusively and solely in the place and stead of Grantor and to have all of the powers of Grantor for the purposes stated above.

No Requirement to Act. Lender shall not be required to do any of the foregoing acts or things, and the fact that Lender shall have

EXHIBIT 3

performed one or more of the foregoing acts or things shall not require Lender to do any other specific act or thing.

**APPLICATION OF RENTS.** All costs and expenses incurred by Lender in connection with the Property shall be for Grantor's account and Lender may pay such costs and expenses from the Rents. Lender, in its sole discretion, shall determine the application of any and all Rents received by it; however, any such Rents received by Lender which are not applied to such costs and expenses shall be applied to the Indebtedness. All expenditures made by Lender under this Assignment and not reimbursed from the Rents shall become a part of the Indebtedness secured by this Assignment, and shall be payable on demand, with interest at the Note rate from date of expenditure until paid.

**FULL PERFORMANCE.** If Grantor pays all of the Indebtedness when due and otherwise performs all the obligations imposed upon Grantor under this Assignment, the Note, and the Related Documents, Lender shall execute and deliver to Grantor a suitable satisfaction of this Assignment and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Property. Any termination fee required by law shall be paid by Grantor, if permitted by applicable law.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Assignment or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Assignment or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Rents or the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Assignment also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Assignment:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Assignment or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Default on Other Payments.** Failure of Grantor within the time required by this Assignment to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Default in Favor of Third Parties.** Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to perform Grantor's obligations under this Assignment or any of the Related Documents.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Assignment or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Assignment or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Borrower or Grantor, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against the Rents or any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Property Damage or Loss.** The Property is lost, stolen, substantially damaged, sold, borrowed against, levied upon, seized, or attached.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Assignment within the preceding twelve (12) months, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of any Event of Default and at any time thereafter, Lender may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**Collect Rents.** Lender shall have the right, without notice to Borrower or Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender shall have all the rights provided for in the Lender's Right to Receive and Collect Rents Section, above. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Assignment or the Note or by law.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Assignment, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Assignment, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear

Interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

MISCELLANEOUS PROVISIONS. The following miscellaneous provisions are a part of this Assignment:

Amendments. This Assignment, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Assignment. No alteration of or amendment to this Assignment shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

Caption Headings. Caption headings in this Assignment are for convenience purposes only and are not to be used to interpret or define the provisions of this Assignment.

Governing Law. This Assignment will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Oregon without regard to its conflicts of law provisions. This Assignment has been accepted by Lender in the State of Oregon.

Joint and Several Liability. All obligations of Borrower and Grantor under this Assignment shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Grantor signing below is responsible for all obligations in this Assignment.

Merger. There shall be no merger of the interest or estate created by this Assignment with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

Interpretation. (1)  In all cases where there is more than one Borrower or Grantor, then all words used in this Assignment in the singular shall be deemed to have been used in the plural where the context and construction so require. (2)  If more than one person signs this Assignment as "Grantor," the obligations of each Grantor are joint and several. This means that if Lender brings a lawsuit, Lender may sue any one or more of the Grantors. If Borrower and Grantor are not the same person, Lender need not sue Borrower first, and that Borrower need not be joined in any lawsuit. (3)  The names given in paragraphs or sections in this Assignment are for convenience purposes only. They are not to be used to interpret or define the provisions of this Assignment.

No Waiver by Lender. Lender shall not be deemed to have waived any rights under this Assignment unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Assignment shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Assignment. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Assignment, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

Notices. Any notice required to be given under this Assignment shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Assignment. Any party may change its address for notices under this Assignment by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

Powers of Attorney. The various agencies and powers of attorney conveyed on Lender under this Assignment are granted for purposes of security and may not be revoked by Grantor until such time as the same are renounced by Lender.

Severability. If a court of competent jurisdiction finds any provision of this Assignment to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Assignment. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Assignment shall not affect the legality, validity or enforceability of any other provision of this Assignment.

Successors and Assigns. Subject to any limitations stated in this Assignment on transfer of Grantor's interest, this Assignment shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Assignment and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Assignment or liability under the Indebtedness.

Time is of the Essence. Time is of the essence in the performance of this Assignment.

WAIVER OF HOMESTEAD EXEMPTION. Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Oregon as to all Indebtedness secured by this Assignment.

WAIVER OF RIGHT OF REDEMPTION. NOTWITHSTANDING ANY OF THE PROVISIONS TO THE CONTRARY CONTAINED IN THIS ASSIGNMENT, GRANTOR HEREBY WAIVES ANY AND ALL RIGHTS OF REDEMPTION FROM SALE UNDER ANY ORDER OR JUDGMENT OF FORECLOSURE ON GRANTOR'S BEHALF AND ON BEHALF OF EACH AND EVERY PERSON, EXCEPT JUDGMENT CREDITORS OF GRANTOR, ACQUIRING ANY INTEREST IN OR TITLE TO THE PROPERTY SUBSEQUENT TO THE DATE OF THIS ASSIGNMENT.

DEFINITIONS. The following capitalized words and terms shall have the following meanings when used in this Assignment. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Assignment shall have the meanings attributed to such terms in the Uniform Commercial Code:

Assignment. The word "Assignment" means this ASSIGNMENT OF RENTS, as this ASSIGNMENT OF RENTS may be amended or modified from time to time, together with all exhibits and schedules attached to this ASSIGNMENT OF RENTS from time to time.

Borrower. The word "Borrower" means Peter M Bucklin.

Default. The word "Default" means the Default set forth in this Assignment in the section titled "Default".

Event of Default. The words "Event of Default" mean any of the events of default set forth in this Assignment in the default section of this Assignment.

Grantor. The word "Grantor" means Peter Bucklin, Joan Bucklin and James Ollendick.

Guarantor. The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

Guaranty. The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

Indebtedness. The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Assignment, together with interest on such amounts as provided in this Assignment. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision of this Assignment, together with all interest thereon.

Lender. The word "Lender" means PremierWest Bank, its successors and assigns.

Note. The word "Note" means the promissory note dated August 24, 2006, in the original principal amount of $3,400,000.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

3

## ASSIGNMENT OF RENTS
### (Continued)

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Assignment" section of this Assignment.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all of Grantor's present and future rights, title and interest in, to and under any and all present and future leases, including, without limitation, all rents, revenue, income, issues, royalties, bonuses, accounts receivable, cash or security deposits, advance rentals, profits and proceeds from the Property, and other payments and benefits derived or to be derived from such leases of every kind and nature, whether due now or later, including without limitation Grantor's right to enforce such leases and to receive and collect payment and proceeds thereunder.

THE UNDERSIGNED ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS ASSIGNMENT.  THIS DOCUMENT IS EXECUTED ON AUGUST 24, 2006.

GRANTOR:

X _____   X _____
Peter Bucklin                                Joan Bucklin

X _____   **PLEASE SEE ATTACHED**
James Ollendick                     **ACKNOWLEDGEMENT**
                                               **FROM NOTARY PUBLIC**

---

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF _____Oregon_____  )
                                                   ) SS
COUNTY OF ____Jackson____  )

OFFICIAL SEAL
ROBERT D. MOOERS
NOTARY PUBLIC-OREGON
COMMISSION NO. 365013
MY COMMISSION EXPIRES MAR. 25, 2007

On this day before me, the undersigned Notary Public, personally appeared Peter Bucklin; Joan  Bucklin; and James Ollendick, to me known to be the individuals described in and who executed the ASSIGNMENT OF RENTS, and acknowledged that they signed the Assignment as their free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this ___25+h___ day of ___August___, 20 _06_ .

By ___Robert D Moon___   Residing at ___Medford___

Notary Public in and for the State of ___Oregon___   My commission expires ___3-25-2007___

LASER PRO Lending, Ver. 5.32.10.003  Copr. Harland Financial Solutions, Inc. 1997, 2006.  All Rights Reserved.  - OR  C:\HFS\CFI\LPL\G14.FC  TR-37744  PR-2

*506-19989*

RECORDATION REQUESTED BY:
  PremierWest Bank
  Southern Oregon Loan Production Office
  P O Box 40
  503 Airport Road
  Medford, OR 97501

WHEN RECORDED MAIL TO:
  PremierWest Bank
  ATTN:Loan Assistant
  P O Box 40
  Medford, OR 97501

SEND TAX NOTICES TO:
  Peter M. Bucklin, Michael Hartman and Katie Hartman
  485 Ormsby Lane
  Petaluma, CA 94954

| | |
|---|---|
| Recorded in Official Records, Solano County | 11/29/2006 8:00 AM |
| **Marc C. Tonnesen** Assessor/Recorder | AR59 RT |
| 06 Placer Title Co | |

Doc#: **200600150310**

| | Titles: 1 | Pages: 10 |
|---|---|---|
| | Fees | 34.00 |
| | Taxes | 0.00 |
| | Other | 0.00 |
| | PAID | $34.00 |

FOR RECORDER'S USE ONLY

## ASSIGNMENT OF RENTS

THIS ASSIGNMENT OF RENTS dated November 10, 2006, is made and executed between Peter M. Bucklin , a married man as his sole and separate property as to an undivided 50% interest and Michael Hartman and Katie Hartman, husband and wife, as community property with right of survivorship as to an undivided 50% interest (referred to below as "Grantor") and PremierWest Bank, whose address is P O Box 40, 503 Airport Road, Medford, OR 97501 (referred to below as "Lender").

**ASSIGNMENT.** For valuable consideration, Grantor hereby assigns, grants a continuing security interest in, and conveys to Lender all of Grantor's right, title, and interest in and to the Rents from the following described Property located in Solano County, State of California:

    See Exhibit "A", which is attached to this Assignment and made a part of this Assignment as if fully set forth herein.

The Property or its address is commonly known as 211 Peabody Road, Vacaville, CA 95687. The Assessor's Parcel Number for the Property is 0131-160-250.

**This is an absolute assignment of Rents made in connection with an obligation secured by property pursuant to California Civil Code section 2938.**

**FUTURE ADVANCES.** In addition to the Note, this Assignment secures all future advances made by Lender to Grantor whether or not the advances are made pursuant to a commitment. Specifically, without limitation, this Assignment secures, in addition to the amounts specified in the Note, all future amounts Lender in its discretion may loan to Grantor, together with all interest thereon.

THIS ASSIGNMENT IS GIVEN TO SECURE (1) PAYMENT OF THE INDEBTEDNESS AND (2) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF GRANTOR UNDER THE NOTE, THIS ASSIGNMENT, AND THE RELATED DOCUMENTS. THIS ASSIGNMENT IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Assignment or any Related Documents, Grantor shall pay to Lender all amounts secured by this Assignment as they become due, and shall strictly perform all of Grantor's obligations under this Assignment. Unless and until Lender exercises its right to collect the Rents as provided below and so long as there is no default under this Assignment, Grantor may remain in possession and control of and operate and manage the Property and collect the Rents, provided that the granting of the right to collect the Rents shall not constitute Lender's consent to the use of cash collateral in a bankruptcy proceeding.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that:

    **Ownership.** Grantor is entitled to receive the Rents free and clear of all rights, loans, liens, encumbrances, and claims except as disclosed to and accepted by Lender in writing.

    **Right to Assign.** Grantor has the full right, power and authority to enter into this Assignment and to assign and convey the Rents to Lender.

    **No Prior Assignment.** Grantor has not previously assigned or conveyed the Rents to any other person by any instrument now in force.

    **No Further Transfer.** Grantor will not sell, assign, encumber, or otherwise dispose of any of Grantor's rights in the Rents except as provided in this Assignment.

**LENDER'S RIGHT TO RECEIVE AND COLLECT RENTS.** Lender shall have the right at any time, and even though no default shall have occurred under this Assignment, to collect and receive the Rents. For this purpose, Lender is hereby given and granted the following rights, powers and authority:

    **Notice to Tenants.** Lender may send notices to any and all tenants of the Property advising them of this Assignment and directing all Rents to be paid directly to Lender or Lender's agent.

    **Enter the Property.** Lender may enter upon and take possession of the Property; demand, collect and receive from the tenants or from

EXHIBIT 4

## ASSIGNMENT OF RENTS
### (Continued)

Loan No: 583056223

any other persons liable therefor, all of the Rents; institute and carry on all legal proceedings necessary for the protection of the Property, including such proceedings as may be necessary to recover possession of the Property; collect the Rents and remove any tenant or tenants or other persons from the Property.

**Maintain the Property.** Lender may enter upon the Property to maintain the Property and keep the same in repair; to pay the costs thereof and of all services of all employees, including their equipment, and of all continuing costs and expenses of maintaining the Property in proper repair and condition, and also to pay all taxes, assessments and water utilities, and the premiums on fire and other insurance effected by Lender on the Property.

**Compliance with Laws.** Lender may do any and all things to execute and comply with the laws of the State of California and also all other laws, rules, orders, ordinances and requirements of all other governmental agencies affecting the Property.

**Lease the Property.** Lender may rent or lease the whole or any part of the Property for such term or terms and on such conditions as Lender may deem appropriate.

**Employ Agents.** Lender may engage such agent or agents as Lender may deem appropriate, either in Lender's name or in Grantor's name, to rent and manage the Property, including the collection and application of Rents.

**Other Acts.** Lender may do all such other things and acts with respect to the Property as Lender may deem appropriate and may act exclusively and solely in the place and stead of Grantor and to have all of the powers of Grantor for the purposes stated above.

**No Requirement to Act.** Lender shall not be required to do any of the foregoing acts or things, and the fact that Lender shall have performed one or more of the foregoing acts or things shall not require Lender to do any other specific act or thing.

APPLICATION OF RENTS. All costs and expenses incurred by Lender in connection with the Property shall be for Grantor's account and Lender may pay such costs and expenses from the Rents. Lender, in its sole discretion, shall determine the application of any and all Rents received by it; however, any such Rents received by Lender which are not applied to such costs and expenses shall be applied to the Indebtedness. All expenditures made by Lender under this Assignment and not reimbursed from the Rents shall become a part of the Indebtedness secured by this Assignment, and shall be payable on demand, with interest at the Note rate from date of expenditure until paid.

FULL PERFORMANCE. If Grantor pays all of the Indebtedness when due and otherwise performs all the obligations imposed upon Grantor under this Assignment, the Note, and the Related Documents, Lender shall execute and deliver to Grantor a suitable satisfaction of this Assignment and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Property. Any termination fee required by law shall be paid by Grantor, if permitted by applicable law.

LENDER'S EXPENDITURES. If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Assignment or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Assignment or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Rents or the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Assignment also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

DEFAULT. Each of the following, at Lender's option, shall constitute an Event of Default under this Assignment:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Assignment or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default on Other Payments.** Failure of Grantor within the time required by this Assignment to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Default in Favor of Third Parties.** Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to perform Grantor's obligations under this Assignment or any of the Related Documents.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Assignment or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Assignment or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Grantor, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against the Rents or any property

# ASSIGNMENT OF RENTS

securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Property Damage or Loss.** The Property is lost, stolen, substantially damaged, sold, or borrowed against.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Assignment within the preceding twelve (12) months, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of any Event of Default and at any time thereafter, Lender may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender shall have all the rights provided for in the Lender's Right to Receive and Collect Rents Section, above. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Assignment or the Note or by law.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Assignment, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Assignment, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Assignment:

**Amendments.** This Assignment, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Assignment. No alteration of or amendment to this Assignment shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Caption Headings.** Caption headings in this Assignment are for convenience purposes only and are not to be used to interpret or define the provisions of this Assignment.

**Governing Law.** With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Property, this Assignment will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the State of California. In all other respects, this Assignment will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Oregon without regard to its conflicts of law provisions. However, if there ever is

**ASSIGNMENT OF RENTS**
**(Continued)**

Loan No: 583056223

Page 4

---

a question about whether any provision of this Assignment is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Assignment has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of Oregon.

**Joint and Several Liability.** All obligations of Grantor under this Assignment shall be joint and several, and all references to Grantor shall mean each and every Grantor. This means that each Grantor signing below is responsible for all obligations in this Assignment.

**Merger.** There shall be no merger of the interest or estate created by this assignment with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Interpretation.** (1)  In all cases where there is more than one Borrower or Grantor, then all words used in this Assignment in the singular shall be deemed to have been used in the plural where the context and construction so require. (2)  If more than one person signs this Assignment as "Grantor," the obligations of each Grantor are joint and several. This means that if Lender brings a lawsuit, Lender may sue any one or more of the Grantors.  If Borrower and Grantor are not the same person, Lender need not sue Borrower first, and that Borrower need not be joined in any lawsuit. (3)  The names given to paragraphs or sections in this Assignment are for convenience purposes only. They are not to be used to interpret or define the provisions of this Assignment.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Assignment unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Assignment shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Assignment. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Assignment, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Assignment shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Assignment. Any party may change its address for notices under this Assignment by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Powers of Attorney.** The various agencies and powers of attorney conveyed on Lender under this Assignment are granted for purposes of security and may not be revoked by Grantor until such time as the same are renounced by Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Assignment to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Assignment. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Assignment shall not affect the legality, validity or enforceability of any other provision of this Assignment.

**Successors and Assigns.** Subject to any limitations stated in this Assignment on transfer of Grantor's interest, this Assignment shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Assignment and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Assignment or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Assignment.

**WAIVER OF RIGHT OF REDEMPTION.** NOTWITHSTANDING ANY OF THE PROVISIONS TO THE CONTRARY CONTAINED IN THIS ASSIGNMENT, GRANTOR HEREBY WAIVES ANY AND ALL RIGHTS OF REDEMPTION FROM SALE UNDER ANY ORDER OR JUDGMENT OF FORECLOSURE ON GRANTOR'S BEHALF AND ON BEHALF OF EACH AND EVERY PERSON, EXCEPT JUDGMENT CREDITORS OF GRANTOR, ACQUIRING ANY INTEREST IN OR TITLE TO THE PROPERTY SUBSEQUENT TO THE DATE OF THIS ASSIGNMENT.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Assignment. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Assignment shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Assignment.** The word "Assignment" means this ASSIGNMENT OF RENTS, as this ASSIGNMENT OF RENTS may be amended or modified from time to time, together with all exhibits and schedules attached to this ASSIGNMENT OF RENTS from time to time.

**Borrower.** The word "Borrower" means Peter M. Bucklin, Michael Hartman and Katie Hartman.

**Default.** The word "Default" means the Default set forth in this Assignment in the section titled "Default".

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Assignment in the default section of this Assignment.

**Grantor.** The word "Grantor" means Peter M. Bucklin, Michael Hartman and Katie Hartman.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note

# ASSIGNMENT OF RENTS
## (Continued)

Loan No: 583056223                                                 Page 5

or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expanded or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Assignment, together with interest on such amounts as provided in this Assignment. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision of this Assignment, together with all interest thereon.

**Lender.** The word "Lender" means PremierWest Bank, its successors and assigns.

**Note.** The word "Note" means the promissory note dated November 10, 2006, **in the original principal amount of $2,400,000.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Assignment" section of this Assignment.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all of Grantor's present and future rights, title and interest in, to and under any and all present and future leases, including, without limitation, all rents, revenue, income, issues, royalties, bonuses, accounts receivable, cash or security deposits, advance rentals, profits and proceeds from the Property, and other payments and benefits derived or to be derived from such leases of every kind and nature, whether due now or later, including without limitation Grantor's right to enforce such leases and to receive and collect payment and proceeds thereunder.

**THE UNDERSIGNED ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS ASSIGNMENT.  THIS DOCUMENT IS EXECUTED ON NOVEMBER 10, 2006.**

GRANTOR:

X _____
Peter M. Bucklin

_____
Michael Hartman

X _____
Katie Hartman

**ASSIGNMENT OF RENTS**
(Continued)

Loan No: 583056223                                                    Page 6

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _California_                     )
                                          ) SS
COUNTY OF _Sonoma_                        )

On _Nov. 21_, 20 _06_ before me, _C. Dolcini a Notary Public_
                                          (here insert name and title of the officer)
personally appeared Peter M. Bucklin; Michael Hartman; and Katie Hartman, personally known to me (or proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

```
                                    C. DOLCINI
                                  COMM. #1534065
Signature _C. Dolcini_       NOTARY PUBLIC - CALIFORNIA
                                    SONOMA COUNTY
                              MyComm. Expires December 12, 2008
```
                                                                    (Seal)

LASER PRO Lending, Ver. 5.35.00.004  Copr. Harland Financial Solutions, Inc. 1997, 2006.  All Rights Reserved.  - CA/OR  C:\OFFICE\LPL\G14.FC  TR-69357  PR-7

## Government Code 27361.7

I certify under penalty of perjury that the notary seal on the document to which this statement is attached reads as follows:

Name of Notary _C. DOLCINI_

Commission Number _153 4065_

Place of Execution _SONOMA_

Date Commission Expires _December 12, 2008_

Date: _Nov. 28, 2006_      _Marcia A Hulse_
                            Signature

                            _____
                            PLACER TITLE

s:\recorder\forms\notary seal

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of   California

County of   Sonoma

On November 8, 2006 before me, S. Palombino, Notary Public
DATE                                                    NAME, TITLE OF OFFICER*
personally appeared Peter M. Bucklin
                                        NAME(S) OF SIGNER(S)

☑   Personally known to me   OR   ☐   proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledge to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

> S. PALOMBINO
> COMM. #1528059
> NOTARY PUBLIC · CALIFORNIA
> SONOMA COUNTY
> My Comm. Expires November 19, 2008

WITNESS my hand and official seal

_____
SIGNATURE OF NOTARY

### OPTIONAL
Though the data below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent reattachment of this form.

| CAPACITY CLAIMED BY SIGNED | DESCRIPTION OF ATTACHED DOCUMENT |
|---|---|
| ☐   INDIVIDUAL | |
| ☐   CORPORATE OFFICER | TITLE OR TYPE OF DOCUMENT |
| _____ TITLE(S) | |
| ☐   PARTNER(S)   ☐   LIMITED   ☐   GENERAL | |
| | NUMBER OF PAGES |
| ☐   ATTORNEY-IN-FACT | |
| ☐   TRUSTEE(S) | DATE OF DOCUMENT |
| ☐   GUARDIAN/CONSERVATOR | |
| ☐   OTHER: _____ | |
| _____ | SIGNER(S) OTHER THAN NAMED ABOVE |
| SIGNER IS REPRESENTING: | |
| _____ | |
| _____ | |

Government Code 27361.7

I certify under penalty of perjury that the notary seal on the document to which this statement is attached reads as follows:

Name of Notary _S. PALOMBINO_

Commission Number _1528059_

Place of Execution _SONOMA_

Date Commission Expires _NOVEMBER 19, 2008_

Date: _Nov 28, 2006_        _Marcia A Hulse_

                              Signature

                              _____
                              PLAGER TITLE

s:\recorder\forms\notary seal

Order No.   506-19989

EXHIBIT "A"
LEGAL DESCRIPTION

THE LAND DESCRIBED HEREIN IS SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF
SOLANO, CITY OF VACAVILLE, AND IS DESCRIBED AS FOLLOWS:

PARCEL ONE:

PARCEL 2A, AS SHOWN ON THE PARCEL MAP OF THE LANDS OF BUCKLIN AND FISHEL, FILED
FOR RECORD ON AUGUST 2, 2004 IN BOOK 45 OF PARCEL MAPS, AT PAGE 83, SOLANO
COUNTY RECORDS.

PARCEL TWO:

A PRIVATE STORM DRAINAGE EASEMENT, APPURTENANT TO PARCEL ONE ABOVE, ACROSS
EXISTING STORM DRAINAGE FACILITIES OVER AND ACROSS LOT 1, AS SHOWN ON THE
AMENDED MAP OF SHASTA PARK, FILED FEBRUARY 13, 1981 IN BOOK 40 OF MAPS, PAGE
88, AS CONVEYED IN THE GRANT DEED EXECUTED BY SHASTA PARK TOWNHOUSE
ASSOCIATION, A NON-PROFIT MUTUAL BENEFIT CORPORATION TO PEABODY SELF STORAGE,
A CALIFORNIA LIMITED PARTNERSHIP, RECORDED MAY 14, 2002 AS INSTRUMENT NO.
2002-00060500, SOLANO COUNTY RECORDS.

PARCEL THREE:

A DRAINAGE EASEMENT, APPURTENANT TO PARCEL ONE ABOVE, DESIGNATED AND DELINEATED
AS A "5' WIDE DRAINAGE EASEMENT", OVER AND ACROSS PARCEL 1, AS SHOWN ON THE
PARCEL MAP FILED SEPTEMBER 24, 2002 IN BOOK 43 OF PARCEL MAPS, AT PAGE 71,
SOLANO COUNTY RECORDS.

PARCEL FOUR:

A PRIVATE ACCESS EASEMENT, APPURTENANT TO PARCEL ONE ABOVE, DESIGNATED AND
DELINEATED AS "ACCESS EASEMENT", OVER AND ACROSS PARCEL 1 AS SHOWN ON THE
PARCEL MAP FILED SEPTEMBER 24, 2002 IN BOOK 43 OF PARCEL MAPS, AT PAGE 71,
SOLANO COUNTY RECORDS.

APN: 0131-160-250



PRE. LEGAL

CLTA Preliminary Report

RECEIVED

10 ... 2 ... 2:54

TRIAL COURT ADMINISTRATOR

1

2

3

4    IN THE CIRCUIT COURT OF THE STATE OF OREGON

5    FOR THE COUNTY OF JACKSON

6    PREMIERWEST BANK,                      Case No. 09-4683-E2

7                   Plaintiff,              **MOTION FOR ORDER TO
                                            SHOW CAUSE FOR**
8            vs.                            **APPOINTMENT OF
                                            RECEIVER**
9    PETER M. BUCKLIN and JOAN B.
     BUCKLIN, Husband and Wife, ROBERT V.
10   ROWLAND and ELEANOR E. ROWLAND,
     Husband and Wife, JEFFERY IVERSON
11   and CATHERINE IVERSON, Husband and
     Wife, JAMES OLLENDICK, and PETER M.
12   AND JOAN B. BUCKLIN REVOCABLE
     TRUST,
13
                   Defendants.
14

15        Plaintiffs move the Court for an order requiring Defendants to appear before

16   this Court on **May 17, 2010, at 9:00 a.m.** to show cause, if any exist, as to why

17   Commercial Real Estate Services Co., LLC should not be appointed as receiver

18   during the pendency of this action to possess, manage, and control the business and

19

20   business assets located at (1) Eagle Landing Mall, and commonly known as 10522,

21   10534, 10546, 10558 and 10586 Highway 62, Eagle Point, Oregon  97524; (2)

22   22266 Hwy. 62 Shady Cove, Oregon  97539; (3) 33 Broken Stone Way, Eagle Point,

23   Oregon  97524, and 151 Morning Dove Trail, Eagle Point, Oregon  97524, as more

24   particularly described in Plaintiffs' complaint, all of which is incorporated herein by

25   this reference.

26                                                        EXHIBIT___5

KELLINGTON, KRACK, RICHMOND, BLACKHURST & GLATTE, LLP
Attorneys at Law
23 NEWTOWN STREET, MEDFORD, OREGON, 97501
Telephone: (541) 779-5175 • Fax: (541) 779-5585

This motion is supported by the attached Affidavit of Thea Lance, the complaint filed herein, and the points and authorities set forth below.

## POINTS AND AUTHORITIES

Plaintiff is entitled to appointment of a Receiver on the three properties referenced above because each of the promissory notes are in default and the credit instruments and trust deeds that Defendants signed contractually give Plaintiff the right to appointment of receiver and collection of rents. A contractual provision providing for the appointment of a receiver and collection of rents is enforceable even if the plaintiff cannot establish that the property or income is in danger or that it must be protected under ORCP 80 B(1) or 80 B(5). <u>Investors Syndicate v. Smith</u>, 105 F2d 611, 619 (9th Cir 1939) (interpreting Oregon law); <u>Hubbs v. Warehouse Serv. Corp.</u>, 149 Or 559, 570, 42 P2d 180 (1935). In addition, ORCP 80 B allows appointment of a receiver:

> (1) Before judgment when any party has a probable right to the property that is the subject of the action, when the property is in the hands of an adverse party, and the property or income from it is in danger of being lost or materially injured (ORCP 80 B(1));

1. Eagle Point Mall.

On August 24, 2006, Defendant Peter M. Bucklin signed a promissory note for $3,400,000.00. The note is in default since the note was required to be paid off in full on August 24, 2009 and it has not been so paid. <u>Affidavit of Thea Lance</u>, ¶ 2. Defendants Peter Bucklin, Joan Buckin and James Ollendick signed a credit instrument. The credit instrument states under Rights and Remedies on Default as follows:

KELLINGTON, KRACK, RICHMOND, BLACKHURST & GLATTE, LLP
Attorneys at Law
23 NEWTOWN STREET, MEDFORD, OREGON, 97501
Telephone: (541) 779-5175 • Fax: (541) 779-5585

Collect Rents.  Lender shall have the right, without notice to Borrower or Grantor to take possession of and manage the property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the indebtedness.  In furtherance of the right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender.  If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds.  Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed.  Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

Appoint Receiver.  Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the indebtedness.  The receiver may serve without bond if permitted by law.  Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the indebtedness by a substantial amount.  Employment by Lender shall not disqualify a person from serving as a receiver.

At the same time that the credit instrument was executed, Peter and Joan Bucklin and James Ollendick assigned all rents in the above-referenced properties to Plaintiff in the event of default.  The assignment of rents is attached to the Affidavit of Thea Lance as Exhibit 1 and incorporated herein by this reference.  The language of the assignment gives Plaintiff the right to appoint a receiver, take possession of the property and collect the rents to operate the mall.

As of April 21, 2010, Defendants are currently collecting the rents on the Eagle Point Landing Mall in the amount of an estimated $16,517.20 per month with expenses of approximately $4,579 per month, leaving a net income of $11,938.20. Affidavit of Thea Lance, ¶ 9.  Based on the assignment of rents and credit

Page 3 – MOTION FOR ORDER TO SHOW CAUSE

KELLINGTON, KRACK, RICHMOND, BLACKHURST & GLATTE, LLP
Attorneys at Law
23 NEWTOWN STREET, MEDFORD, OREGON, 97501
Telephone: (541) 779-5175 • Fax: (541) 779-5585

1
2    instrument, after expenses, Defendants have previously authorized Plaintiffs to apply
3    these rents to the debt obligation and the receiver should be appointed to manage
     the property and be authorized to pay Plaintiff the rent proceeds after expenses.

4        Obviously, Defendants should not be allowed to collect the assigned rents
5    during the pendency of the foreclosure since those rents rightfully should be paid to
6    Plaintiff.  Failure to appoint a receiver to collect such rents will result in the rents
7
8    being lost and/or wasted by Defendants.

9    2)  22266 Hwy., 62, Shady Cove, Oregon.

10       On October 19, 2007, Defendants Peter Bucklin and Joan Bucklin signed a
11   promissory note for $193,000.00.  The note is in default since the note was required
12
13   to be paid off in full on June 20, 2009 and it has not been so paid.  Affidavit of Thea
14   Lance, ¶ 3.  Defendant Joan Bucklin signed a credit instrument, which instrument is
15   attached to the Complaint as Exhibit 9.  The credit instrument authorizes
16   appointment of a receiver and authorizes the receiver to collect rents in the event of
17   default.
18
19       On information and belief, as of April 21, 2010, the Highway 62 property is
20   rented at $750.00 per month. It is unclear who is currently receiving such rents.
21   Based on prior agreement, a receiver must be appointed and the receiver should be
22   authorized to pay rents to Plaintiff after expenses.  Affidavit of Thea Lance, ¶ 10.
23
24   //
25
26   //

Page 4 – MOTION FOR ORDER TO SHOW CAUSE
KELLINGTON, KRACK, RICHMOND, BLACKHURST & GLATTE, LLP
Attorneys at Law
23 NEWTOWN STREET, MEDFORD, OREGON, 97501
Telephone: (541) 779-5175 • Fax: (541) 779-5585

3)  33 Broken Stone Way, Eagle Point, OR.

On October 19, 2007, Defendants Peter M. Bucklin, Joan B. Bucklin, Robert V. Rowland and Eleanor E. Rowland signed a promissory note for $235,000.00. The note is in default since the note was required to be paid off in full on August 15, 2009 and it has not been so paid. Affidavit of Thea Lance, ¶ 4. Defendants Peter M. Bucklin, Joan B. Bucklin, Robert V. Rowland and Eleanor E. Rowland signed a trust deed which specifically allows for the appointment of a receiver and the collection of rents. See, Complaint, Ex. 7.

On information and belief, as of April 21, 2010, the 33 Broken Way property is rented at $1,100 per month. Based on prior agreement, a receiver must be appointed and the receiver should be authorized to pay rents to Plaintiff after expenses. Affidavit of Thea Lance, ¶ 10.

4)  151 Morning Dove Trail, Eagle Point, OR.

On October 19, 2007, Defendants Peter M. Bucklin, Joan B. Bucklin, Robert V. Rowland and Eleanor E. Rowland signed a promissory note for $235,000.00. The note is in default since the note was required to be paid off in full on August 15, 2009 and it has not been so paid. Affidavit of Thea Lance, ¶ 4. Defendants Peter M. Bucklin, Joan B. Bucklin, Robert V. Rowland and Eleanor E. Rowland signed a trust deed which specifically allows for the appointment of a receiver and the collection of rents. See, Complaint, Ex. 7.

KELLINGTON, KRACK, RICHMOND, BLACKHURST & GLATTE, LLP
Attorneys at Law
23 NEWTOWN STREET, MEDFORD, OREGON, 97501
Telephone: (541) 779-5175 • Fax: (541) 779-5585

1
2
3
4

On information and belief, as of April 21, 2010, the 151 Morning Dove Trail property is rented at $1,200 per month. Based on prior agreement, a receiver must be appointed and the receiver should be authorized to pay rents to Plaintiff after expenses. Affidavit of Thea Lance, ¶ 10.

5
6

## CONCLUSION

7
8
9
10
11

Since Defendants have previously authorized appointment of receiver and collection of rents in the event of default and there is clearly a default, a receiver should be appointed. Defendants simply can assert no viable defense that will entitle them to otherwise deny Plaintiff rents after expenses.

12
13

Dated this 22nd day of April, 2010.

14
15

KELLINGTON, KRACK, RICHMOND
BLACKHURST & GLATTE

16
17
18

By
Erik J. Glatte, OSB #95172
Of Attorneys for Plaintiffs
eglatte@kkrbg.com

19
20
21
22
23
24
25
26

1

2

3

4          IN THE CIRCUIT COURT OF THE STATE OF OREGON

5                  FOR THE COUNTY OF JACKSON

6   PREMIERWEST BANK,                    Case No. 09-4683-E2

7                   Plaintiff,           **AFFIDAVIT IN SUPPORT
                                         OF MOTION FOR ORDER**
8          vs.                           **TO SHOW CAUSE**

9   PETER M. BUCKLIN and JOAN B.
    BUCKLIN, Husband and Wife, ROBERT V.
10  ROWLAND and ELEANOR E. ROWLAND,
    Husband and Wife, JEFFERY IVERSON
11  and CATHERINE IVERSON, Husband and
    Wife, JAMES OLLENDICK, and PETER M.
12  AND JOAN B. BUCKLIN REVOCABLE
    TRUST,
13
                    Defendants.
14

15  STATE OF OREGON        )
                           ) ss.
16  County of Jackson      )

17

18         I, Thea Lance, being first duly sworn, say:

19                            1.

20         I am a Special Assets Officer for Plaintiff and I make this affidavit of my own

21  personal knowledge.

22                            2.

23         On August 24, 2006, Defendant Peter M. Bucklin signed a promissory note for

24  $3,400,000.00.  The note is in default since the note was required to be paid off in full

25  on September 24, 2009 and it has not been so paid.  See, Complaint, Ex. 1.

26

Page 1 – AFFIDAVIT IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE

1  Defendants Peter Bucklin, Joan Bucklin and James Ollendick signed a credit

2  instrument . See, Complaint, Ex. 2.  At the same time that the credit instrument was

3  executed, Peter and Joan Bucklin and James Ollendick assigned all rents in the

4  above-referenced properties to Plaintiff in the event of default.  The assignment of

5  rents is attached hereto as Exhibit 1.

6                                                    3.

7       On October 19, 2007 Defendants Peter M. Bucklin and Joan B. Bucklin signed

8  a promissory note for $193,000.00.  See, Complaint, Ex. 8.  The note was required to

9  be paid off in full on June 20, 2009 and it has not been so paid and therefore it is in

10 default.  Defendant Joan Bucklin signed a credit instrument in conjunction with the

11 note . See, Complaint, Ex. 9.  The credit instrument specifically provides for Plaintiff

12 to appoint a receiver and collect rents in event of a default under the credit

13 instrument.

14

15                                                  4.

16      On October 19, 2007 Defendants Peter M. Bucklin, Joan B. Bucklin, Robert V.

17 Rowland and Eleanor E. Rowland signed a promissory note for $235,000.00.  See,

18 Complaint, Ex 6.  The note was required to be paid off in full on August 15, 2009 and

19 it has not been so paid and is in default.  Defendants Peter M. Bucklin, Joan B.

20 Bucklin, Robert V. Rowland and Eleanor E. Rowland signed a trust deed in

21 conjunction with the note.  See, Complaint, Ex. 7.  The trust deed specifically

22 provides for Plaintiff to appoint a receiver and collect rents in event of a default under

23 the credit instrument.

24

25 //

26

KELLINGTON, KRACK, RICHMOND, BLACKHURST & GLATTE, LLP
Attorneys at Law
23 NEWTOWN STREET, MEDFORD, OREGON, 97501
Telephone: (541) 779-5175 • Fax: (541) 779-5585

5.

Plaintiff's right to have a receiver appointed herein is based on the credit instruments, the deeds of trust and the assignment of rents and ORCP 80.

6.

The subject real and personal property are now in the possession of Defendants.

7.

There is no reasonable probability that Defendants can establish a successful defense to the underlying claim for foreclosure of the trust deeds and credit instruments since there is no dispute that Defendants have not paid the debts when due.

8.

Unless a receiver is duly appointed to operate the Eagle Point Mall and collect the rents on the other two properties, the business assets are in danger of being lost, materially injured or impaired.

9.

As of April 21, 2010, Defendants are currently collecting the rents on the Eagle Point Landing Mall in the amount of an estimated $16,517.20 per month with expenses of approximately $4,579 per month, leaving a net income of $11,938.20. These amounts rightfully belong to the bank based on the credit instrument and assignment of rents in the event of default.

//

//

10.

The Highway 62 property is rented at $750.00 (estimated) per month.

The 33 Broken Stone Way property is rented at $1,100.00 per month. The 151

Morning Dove Trail property is rented at $1,200.00 per month. All of these properties

are subject to appointment of Receiver to collect rents.

_Thea Lance_
Thea Lance

SUBSCRIBED AND SWORN TO before me on _April 22_, 2010.

_Katherine R Bates_
Notary Public for Oregon
My commission expires: _9-14-2012_

OFFICIAL SEAL
KATHERINE R. BATES
NOTARY PUBLIC-OREGON
COMMISSION NO. 430410
MY COMMISSION EXPIRES SEPT. 14, 2012

Page 4 – AFFIDAVIT IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE

KELLINGTON, KRACK, RICHMOND, BLACKHURST & GLATTE, LLP
Attorneys at Law
23 NEWTOWN STREET, MEDFORD, OREGON, 97501
Telephone: (541) 779-5175 • Fax: (541) 779-5585

STATE OF OREGON    )
                       ) ss.
County of Jackson    )

     I hereby certify that the within and foregoing is a true, complete and compared transcript of the original **MOTION FOR ORDER TO SHOW CAUSE FOR APPOINTMENT OF RECEIVER** on file herein and of the whole thereof.

ERIK GLATTE

_____
Erik J. Glatte
Of Attorneys for Plaintiff

STATE OF OREGON    )
                       ) ss.
County of Jackson    )

     I hereby certify that I served within and foregoing **MOTION FOR ORDER TO SHOW CAUSE FOR APPOINTMENT OF RECEIVER** on the 22nd day of April, 2010, via facsimile and by depositing a true copy thereof in the United States Mail at Medford, Oregon, enclosed in a sealed envelope with postage thereon fully prepaid, said envelope containing such true copy being plainly addressed to:

          Thomas A. Larkin
          Stewart, Sokol & Gray, LLC
          2300 SW First Avenue, Suite 200
          Portland, OR  97201-5047
          Facsimile:  503-223-5706

ERIK GLATTE

_____
Erik J. Glatte
Of Attorneys for Plaintiff

RECEIVED
AND
FILED

IC JUN 24  AM 9: 30

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF JACKSON

PREMIERWEST BANK,

                    Plaintiff,

          vs.

PETER M. BUCKLIN and JOAN B.
BUCKLIN, Husband and Wife, ROBERT V.
ROWLAND and ELEANOR E. ROWLAND,
Husband and Wife, JEFFERY IVERSON
and CATHERINE IVERSON, Husband and
Wife, JAMES OLLENDICK, and PETER M.
AND JOAN B. BUCKLIN REVOCABLE
TRUST,

                    Defendants.

Case No.  09-4683-E2

ORDER FOR APPOINTMENT
OF RECEIVER

This matter having come before the Court on Plaintiff's order to show cause,

and the Court, having reviewed the pleadings, memorandum of law, and affidavits in

support and evidence presented on June 10, 2010, and being fully advised in the

premises by the lawyers, finds as follows:

     1.    Based on the pleadings, and the evidence presented at hearing,

Plaintiff has satisfied its burden to for the appointment of a receiver;

     2.    The property described in and covered by the security agreements,

credit instruments and trust deeds that is the subject of the foreclosure is real

property located in Jackson County, Oregon, more particularly described in the

Complaint on file herein.

EXHIBIT  6

3.    The credit instruments and trust deeds to the subject properties provide that the Plaintiff may obtain the appointment of a receiver to collect the rents and profits of the property and manage the property upon default of Defendant and upon foreclosure proceedings being instituted.

4.    The Eagle Landing Mall, more specifically identified as 10522, 10534, 10546, 10558 and 10586 Highway 62, Eagle Point, Oregon although not at full capacity grosses approximately $16,517.20 per month.

5    The 22266 Hwy., 62, Shady Cove, Oregon grosses approximately $750.00 per month.

6.    The 33 Broken Stone Way, Eagle Point, Oregon property is grosses approximately $1,100.00 per month.

7.    The 151 Morning Dove Trail, Eagle Point, Oregon property is grosses approximately $1,200.00 per month.

8.    Grounds exist for the appointment of a receiver to take possession of (1) The Eagle Landing Mall located at 10522, 10534, 10546, 10558 and 10586 Highway 62, Eagle Point, Oregon; (2) 22266 Hwy., 62, Shady Cove, Oregon; (3) 33 Broken Stone Way, Eagle Point, Oregon, and (4) 151 Morning Dove Trail, Eagle Point, Oregon, rents, issues, and profits of them,

///

///

IT IS THEREFORE ORDERED that:

1.    Commercial Real Estate Services Co., LLC is appointed Receiver of the above-described real property and improvements on it, to manage, to control, and to protect the property and to collect the rents, issues, and profits from it throughout the pendency of this matter and to account to this Court for them. In addition, the Receiver shall be required to pay expenses, utilities, common area maintenance (CAM) fees, taxes and any other expenses related to the operation of the properties. The Receiver shall be authorized to hire and contract with third parties to maintain the premises in accordance with lease obligations.

2.    The Receiver is authorized to collect a management fee of 6% of the collected gross rentals from the subject real property plus a CAM fee of 10%. The Receiver may withhold these funds from rents as they are collected.

3.    The Receiver is directed to provide this court with a bond in the sum of $100,000 to ensure the faithful performance of its trust.

4.    All tenants of the above-referenced property, currently identified as Golden Gate Health & Fitness, LLC dba Anytime Fitness; Dan Girodat; Groomingdale's Pet Salon; Essentials, LLC; Mercy Flights, Inc.; A Touch of Sun, Inc.; James Adamek and Randy Lomonaco, are immediately required to pay rent to Receiver as directed by Receiver.

5.    The Receiver shall have full unrestricted access to all areas of the following:

Page 3 – ORDER APPOINTING RECEIVER

1)    Eagle Point Mall located at 10522, 10534, 10546, 10558 and 10586 Highway 62, Eagle Point, Oregon; 22266 Hwy.,

2)    62, Shady Cove, Oregon;

3)    33 Broken Stone Way, Eagle Point, Oregon, and

4)    151 Morning Dove Trail, Eagle Point, Oregon,

together with all records, accounts, papers, electronic data, bank accounts, deposits, withdrawals, tax reports, and tax returns and all other documents or records of the business it may consider necessary to its functions. All parties are directed to provide such access without restriction obstruction or delay, whether through the parties, their agents, employees or associates.

6.    The Receiver may, at the option of Receiver and with prior Court approval, appoint, retain, hire or otherwise employ the services of such consultants as the Receiver may deem necessary, including but not limited to the services of a Certified Public Accountant or legal counsel as deemed necessary. The Receiver shall make available to such persons any and all records and accounts that the Receiver may deem necessary.

7.    The Receiver shall comply with ORS 652.500 with regard to payment of wages if any.

8.    If necessary, the Receiver shall have the authority to purchase insurance for the properties located at The Eagle Landing Mall located at 10522, 10534, 10546, 10558 and 10586 Highway 62, Eagle Point, Oregon; 22266 Hwy., 62,

Shady Cove, Oregon; 33 Broken Stone Way, Eagle Point, Oregon, and 151 Morning

Dove Trail, Eagle Point, Oregon, to be paid from rents and assets of the business

premises. Prior to purchase of insurance, the Receiver shall confer with Defendant,

Peter Bucklin, regarding an insurance carrier they have identified. If the Receiver

approves, said Defendant will be allowed to obtain such insurance.

9.    On or before August 1, 2010, the Receiver shall file a report with the

Court setting forth:

a.    The property in greater detail;

b.    The interest in and claims against it; and

c.    Its income-producing capacity and recommendations as to the

. best methods of realizing its value for the benefit of those entitled.

5.    The Receiver shall file further periodic reports and accounting as the

Court shall hereinafter direct.

6.    After the initial report is filed and assuming that net proceeds after

expenses exceed the amount necessary to reasonably operate the properties under

Receivership, the Receiver shall be authorized to pay Plaintiff the excess rents over

expenses. Plaintiff shall be required to apply the payments, if any, to the

indebtedness owed by Defendants to Plaintiff.

7.    All parties to this action shall be enjoined and restrained from selling,

assigning, transferring or delivering any part of the properties or business subject to

the Receivership until further order of the Court. However, this does not prohibit the

above parties from exercising their rights to pursue legal remedies in the matters that
are otherwise available to them.

8.    If the Receiver, in the course of exercising its responsibilities to this
Court, encounters obstructions, restrictions, delay or lack of cooperation by a party,
the Receiver shall, without further notice, file with this Court a Motion and Order to
Show Cause directing the person or persons responsible for the delay or obstruction
to appear and show cause why said person or persons should not be held in
contempt of this Court.  In  the event the Receiver believes it to be necessary, and
with prior Court approval, the Receiver may retain the services of an attorney to file
such pleadings or other documents with the Court as may be necessary, the
compensation for attorney fees in such case to be paid by the rents collected as an
additional cost of the Receivership.

9.    The Receiver is accepting appointment on the premises and
understanding that 33 Broken Stone Way, Eagle Point, Oregon, and 151 Morning
Dove Trail, Eagle Point, Oregon are currently rented and that the tenants of those
properties are currently paying rent.  In the event the Receiver, after appointment,
determines that any of said properties are not otherwise rented and not generating
sufficient revenue, the Receiver shall notify the Court of such situation and be
permitted, if allowed by the Court to withdraw as Receiver of those properties.  In the
event of withdrawal, Defendants will be responsible for payment of the obligation to
the first mortgage holder.

KELLINGTON, KRACK, RICHMOND, BLACKHURST & GLATTE, LLP
Attorneys at Law
23 NEWTOWN STREET, MEDFORD, OREGON, 97501
Telephone: (541) 779-5175 • Fax: (541) 779-5585

10.    At the further Order of this Court, the Receiver shall provide to the

Court a final report setting forth all the activities of the Receiver and the expenses

incurred, including those incurred by the consultants and attorneys employed by the

Receiver, if any.

DATED this 23 day of _____June_____, 2010.

## G. PHILIP ARNOLD

Circuit Court Judge

Submitted by:
Erik J. Glatte, OSB #95172
Kellington Krack Richmond Blackhurst & Glatte, LLP
PO Box 1583, Medford, OR 97501
(541) 779-5175
Of Attorneys for Plaintiffs

Page 7 – ORDER APPOINTING RECEIVER

STATE OF OREGON    )
                         ) ss.

County of Jackson    )

    I hereby certify that the within and foregoing is a true, complete and compared transcript of the original ORDER FOR APPOINTMENT OF RECEIVER on file herein and of the whole thereof.

JOHN BLACKHURST

Erik J. Glatte
John Blackhurst
Of Attorneys for Plaintiff


STATE OF OREGON    )
                         ) ss.

County of Jackson    )

    I hereby certify that I served within and foregoing ORDER FOR APPOINTMENT OF RECEIVER on the 18th day of June, 2010, via facsimile and by depositing a true copy thereof in the United States Mail at Medford, Oregon, enclosed in a sealed envelope with postage thereon fully prepaid, said envelope containing such true copy being plainly addressed to:

        Thomas A. Larkin
        Stewart, Sokol & Gray, LLC
        2300 SW First Avenue, Suite 200
        Portland, OR  97201-5047
        Facsimile:  503-223-5706

JOHN BLACKHURST

Erik J. Glatte
John Blackhurst
Of Attorneys for Plaintiff

## BUCKLIN LOANS

| Loan Number | Property | Past Due Prop. Taxes |
|---|---|---|
| 583085073 (Count 3) | MFH in Shady Cove<br>(22266 Hwy. 62, Shady Cove) | $200 |
| 583081742 (Count 1) | Eagle Landing Mall<br>10522, 10514 & 10648 Hwy. 62, EP | $15,480 |
| 583077302 | Anderson Lot<br>2520 Balls Ferry Rd., Anderson, CA 96007 | $12,750 |
| 583056223 | Vacaville Mall<br>211 Peabody Rd., Vacaville, CA 95687 | $161,158 |
| 503071750 (Count 4) | Lot in EP<br>54 Pebble Creek Dr., EP | $8,156 |
| 583085099 (Count 2) | 151 Morning Dove & 33 Broken Stone, EP | Current |
| 503072964 (Count 5) | Consumer Loan ($34,200) | Current |

Without payments the loans will increase in the following amounts every 30 days:

| Loan Number | Property | Amount |
|---|---|---|
| 583085073 (Count 3) | MFH in Shady Cove<br>(22266 Hwy. 62, Shady Cove) | $1,964.70 |
| 583081742 (Count 1) | Eagle Landing Mall<br>10522, 10514 & 10648 Hwy. 62, EP | $32,472.33 |
| 583077302 | Anderson Lot<br>2520 Balls Ferry Rd., Anderson, CA 96007 | $2,149.88 |
| 583056223 | Vacaville Mall<br>211 Peabody Rd., Vacaville, CA 95687 | $22,950.58 |
| 503071750 (Count 4) | Lot in EP<br>(54 Pebble Creek Dr., EP) | $2,354.58 |
| 583085099 (Count 2) | 151 Morning Dove & 33 Broken Stone, EP | $2,336.98 |
| 503072964 (Count 5) | Consumer Loan ($34,200) | $110.90 |



EXHIBIT 7